**K–MART NO. 4195 et al., Appellants,**

**v.**

**Maxine JUDGE, Appellee.**

**No. 7610.**

Court of Civil Appeals of Texas, Beaumont.

Oct. 17, 1974.

Remittitur Filed—Affirmed Oct. 29, 1974.

Rehearing Denied Nov. 7, 1974.

James L. Weber, Mehaffey, Weber, Keith & Gonsoulin, Beaumont, for appellants.

Harold Peterson, Michael S. Petit, Beaumont, for appellee.

KEITH, Justice.

The defendant appeals from an adverse judgment rendered in a suit for false imprisonment where the jury returned a verdict which included both actual and exemplary damages. We will designate the parties as they appeared in the trial court.

Plaintiff was accompanied to defendant's store by Charlotte Taylor, a known shoplifter; but, when the two reached the store, according to plaintiff, she went to the rear and made a payment upon some merchandise which she had in lay-away. Taylor went to an area in the store where wigs were sold, examined several wigs, secreted one in her clothing, and went to the front of the store.

Security officer Broussard, employed by defendant, observed Taylor's activities; and, according to Broussard, plaintiff was with Taylor at the time. Broussard said that he recognized Taylor from photographs of known shoplifters which had been circulated by the Beaumont Police to store personnel. Broussard sought help from another security officer, Bradford, assigning the latter to watching plaintiff.

Taylor was apprehended by Broussard after she had passed the checkout counter without paying for the secreted wig. Bradford apprehended plaintiff near the front door of the store. At this point, the testimony diverges greatly: plaintiff says that she was apprehended inside the store near the front door; Bradford says that he chased her out on the parking lot before finally catching her.

Plaintiff and Taylor were escorted by Bradford and Broussard to an office in the rear of the store where female employees of defendant searched both women. Nothing of an incriminating nature was found on plaintiff, but the wig was found on Taylor. After considerable discussion, Broussard summoned city police who escorted the women to the police station where they were placed in jail. Taylor pleaded guilty to shoplifting, and plaintiff pleaded not guilty at the subsequent trial in the corporation court. Broussard, but not Bradford, was notified by the prosecuting attorney to attend plaintiff's trial. When he was unable to testify under oath that plaintiff had stolen anything from defendant's store, the judge found plaintiff not guilty of the offense. This suit when followed with Taylor being plaintiff's main witness.

■ Defendant attacks the jury finding in answer to the first special issue [that defendant's agents Bradford and Broussard did not have reasonable grounds to suppose that plaintiff had committed the offense of shoplifting] as being so against the overwhelming weight and preponderance of the evidence as to be clearly wrong. Considering the record as a whole, we disagree and point eight is overruled. By point nine, defendant contends that, as a matter of law, it had reasonable cause "to suspect appellee of shoplifting." Having reviewed the record from the standpoint most favorable to the verdict, we find no merit in the point, and it is overruled.

The entire record shows quite clearly that plaintiff sought recovery upon the theory of false imprisonment. Indeed, plaintiff submitted issues upon no other theory, and her judgment is based solely upon a finding of false imprisonment. Nevertheless, there was a paragraph in her trial pleading which alleged, in a very general manner, most of the elements of mali-

cious prosecution. No exceptions were leveled at this pleading. Prior to the commencement of trial, defendant filed its motion in limine seeking an order from the court requiring plaintiff to refrain from reading to the jury an allegation in the petition,[1] and from offering evidence in support thereof. This motion in limine was overruled.

Early in the proceedings, plaintiff testified in detail as to her trial in the municipal court and said that when Broussard was unable to testify as to any facts showing her guilt, the judge found her not guilty of any offense. The sequence of events is set out in this manner:

"Q. [Plaintiff's counsel] What did you plead?

"A. [Plaintiff] Not guilty.

"[Defendant's counsel]: Your Honor, I'd like to make my objection to the final disposition of this.

"THE COURT: All right.

"[Defendant's counsel]: I trust the Court's [sic] overruled?

"THE COURT: Overruled."

Later, when plaintiff was asked to tell the jury what happened at the city court, defendant's counsel stated:

"Your Honor, I would like my objections to run to the entire line of questioning as to the proceedings that were had.

"THE COURT: All right."

Defendant now complains by points one and two that reversible error is shown by the admission of plaintiff's testimony concerning the acquittal. We disagree and overrule such points.

Before a plaintiff may maintain a suit for malicious prosecution, he must allege and prove that the criminal prosecution is at an end. As stated in Glasgow v. Owen, 69 Tex. 167, 6 S.W. 527, 531 (1887):

"To maintain the action, it must be shown that there was a prosecution; that it was malicious; that it was without probable cause; and *that the prosecution is at an end.* McManus v. Wallis, 52 Tex. 535; Usher v. Skidmore, 28 Tex. 617; 2 Greenl.Ev. § 452." (emphasis supplied)

Accord: Rust v. Page, 52 S.W.2d 937, 941 (Tex.Civ.App.—Fort Worth 1932, writ dism'd)[2]; Shoemaker v. McElwaine, 59 S.W.2d 440, 441 (Tex.Civ.App.—San Antonio 1933, no writ); Flowers v. Central Power & Light Co., 314 S.W.2d 373, 375 (Tex.Civ.App.—Waco 1958, writ ref'd n. r. e.); Yianitsas v. Mercantile National Bank at Dallas, 410 S.W.2d 848, 850 (Tex.Civ. App.—Dallas 1967, no writ); Browning v. Pay-Less Self Service Shoes, Inc., 373 S. W.2d 71, 74 (Tex.Civ.App.—Austin 1963, no writ). See also Beaurline v. Smith, 426 S.W.2d 295, 298 (Tex.Civ.App.—Corpus Christi 1968, writ ref'd n. r. e.), where additional cases are cited in accord with this rule.

Defendant cites State v. Benavidez, 365 S.W.2d 638, 641 (Tex.1963), announcing the general rule with reference to the inadmissibility of the judgment of acquittal in criminal actions in subsequent civil proceedings. The rule is clear but has no applicability to this cause. This quotation from *Benavidez,* supra, illustrates the distinction between the case at bar and the one under consideration there:

"We hold that the judgment [of acquittal] will not be admissible as evidence on

---

1. The allegation which defendant sought to keep from the jury was this: "Even without representation by an attorney at law, plaintiff was found innocent of these charges as defendants produced no person that could give testimony in support of said charges."

2. Rust v. Page, supra, supports a comment to be found in 11 Texas L.Rev. 256 (1932), with additional authorities examined.

the trial of the *ultimate* issue in the forfeiture proceeding. Ordinarily acquittals in criminal actions are not admissible as evidence in subsequent civil proceedings involving common fact issues." (emphasis supplied) [3]

There, the ultimate issue in both the civil and the criminal proceedings was the possession by Benavidez of the thirty-two bottles of beer in a dry area. His acquittal in the criminal case did not establish a defense to the civil forfeiture proceeding; it was not even admissible on the ultimate issue. Here, plaintiff was required to prove that the criminal proceeding was at an end —not as the ultimate issue in this case— but merely as a condition precedent to the maintenance of her suit for malicious prosecution.

■ The testimony being admissible on one issue, it was defendant's burden to make the proper request of the trial court to limit the testimony to the issue upon which it was admitted. Wilson v. Avery Co. of Texas, 182 S.W. 884, 886 (Tex.Civ.App.—Amarillo 1916, writ ref'd); Bourland v. Huffhines, 244 S.W. 847, 853 (Tex.Civ.App.—Amarillo 1922, writ dism'd).

In Blum Milling Co. v. Moore-Seaver Grain Co., 277 S.W. 78, 81–82 (Tex. Comm'n App.1925, jdgmt adopted), the Court said:

"Amongst the rules of evidence recognized and enforced in our decisions is this: If proffered testimony is admissible in respect to any existent issue, it cannot rightly be excluded because it is not admissible on all issues. . . . A rule of practice has its source in that evidentiary principle: It is no duty of the trial court, on its own motion, to restrict consideration of the testimony to a particular relevant issue . . .; in that situation, the objecting party must at the time of admission, or later by special charge or motion, request its limitation. . . . And observance of the rule of practice is essential to the right of complaint on appeal. . . . If it were true that the testimony was subject to restriction, that was not done, or requested, and the question of its admissibility for all purposes is foreclosed." (all citations omitted)

■ Despite the court's action in overruling the motion in limine, defendant still labored under the burden of interposing a specific objection at the time the evidence was tendered in order to preserve the right to complain on appeal. Hartford Accident and Indemnity Co. v. McCardell, 369 S.W.2d 331, 335 (Tex.1963). Defendant made no tenable objection to the receipt of the testimony about which it now complains. The first statement quoted above simply expressed a desire to object, which the court granted, but no objection was forthcoming. The grant of a "running objection" did not create a tenable objection when none had been urged.

■ Even if we were to conclude that defendant intended to incorporate his objections set out in his motion in limine into the trial objection—contrary to *McCardell*—it was at best a general objection. In Brown & Root v. Haddad, 142 Tex. 624, 180 S.W.2d 339, 341 (1944), many cases are cited supporting this well-recognized rule:

"A general objection to evidence as a whole, whether it be oral or documentary, which does not point out specifically the portion objected to, is properly overruled if any part of it is admissible."

As indicated earlier, plaintiff was required to show that the prosecution had terminated without her having been found guilty of the charge. She may not have presented the best evidence and her own

---

3. Defendant's reliance upon Landa v. Obert, 78 Tex. 33, 14 S.W. 297 (1890), is likewise misplaced. There the Court pointedly noted that "the issue of malicious prosecution was out of the case." Id. at 301.

testimony might even have been hearsay; but defendant made no such objection. Nor did defendant make any motion to strike the testimony for these or any other reasons. See J. Pope, "Presenting and Excluding Evidence," 3 Trial Lawyers Forum 15, 53 (No. 7 Sept.-Oct.1969).[4]

Points one and two are overruled.

The trial court submitted four special issues to the jury: (No. 1) Whether Bradford and Broussard "had reasonable grounds to suppose that plaintiff had committed the offense of shoplifting"; (No. 2) actual damage issue based upon false imprisonment; (No. 3) whether the conduct of Bradford and Broussard "on the occasion in question was willfull and malicious"; and (No. 4) amount of exemplary damages. All issues were answered in plaintiff's favor and defendant now complains, by point five, that the trial court erred in entering judgment for exemplary damages "because there is no finding that appellants [defendant] ratified or adopted any malicious acts of their employees."

Defendant addressed no such objection to the court's charge nor were any issues requested which would have submitted this question. Our disposition of the substantive question makes it unnecessary for us to discuss the procedural problem which arises under the provisions of Texas Rules of Civil Procedure, rule 279.

█ After a careful review of the record, we are convinced that Bradford and Broussard were acting within the course and scope of their employment with the defendant in apprehending and detaining the plaintiff. Such fact was established as a matter of law, and no jury finding was necessary to entitle plaintiff to hold the defendant liable for actual damages under the doctrine of respondeat superior. The defendant's store manager,

Robert J. Flickinger, testified that it was the duty of the security officers to apprehend shoplifters and to prevent the theft of merchandise on display therein.

Flickinger made no attempt to repudiate the acts of Bradford and Broussard at the time and on the occasion in question. He did not testify that such acts were contrary to express instructions, or in excess of their delegated authority, or done without the knowledge of defendant. Instead, he testified unequivocally that it was the duty of Bradford and Broussard to apprehend shoplifters in order "[t]o protect our profits" because what "we lose at the store . . . comes directly out of the net profit picture of the store."

Flickinger was asked this direct question by defendant's counsel:

"Q. Mr. Flickinger, in running the business out there, have you made an economic judment that it's worth the money that you spend on detecting shoplifters to employ the security personnel that you do?

"A. Well, by virtue of the fact that it is a direction of the Kresge Company that we have trained and qualified people to apprehend shoplifters, the answer that I can give to that is that I'm behind it a hundred per cent."

Texas adopted the Restatement of Torts, § 909, setting out the several bases upon which a corporation could be held liable for exemplary damages in the case of King v. McGuff, 149 Tex. 432, 234 S.W.2d 403, 405 (1950). In Fisher v. Carrousel Motor Hotel, Inc., 424 S.W.2d 627, 630 (Tex. 1967), the Court followed *King* and the *Restatement*, thereby holding the principal liable for exemplary damages in a case where it had been stipulated that the employee involved was the manager of the club and in the course of his employment.[5]

4. This article is reproduced in Benchbook for Texas Trial Judges, Part I, p. 1.14.15, at 1.14.27, Texas Center for the Judiciary (1973). See also C. McCormick, "The Pro-

cedure of Admitting and Excluding Evidence," 31 Texas L.Rev. 128, 161 (1952).

5. The *Restatement* text so adopted does not differ materially from the test laid down by

See also, International Security Life Insurance Co. v. Finck, 496 S.W.2d 544, 546 (Tex.1973); Richter v. Plains National Bank, 479 S.W.2d 95, 97 (Tex.Civ.App.—Eastland 1972, writ ref'd n. r. e.); Transport Insurance Company v. Mabra, 487 S. W.2d 704 (Tex.1972).

■ Thus, under the authoritative holdings in both *King* and *Fisher,* supra, the principal or master is liable for exemplary or punitive damages because of the acts of his agents if: "(d) the employer or a manager of the employer ratified or approved the act." Flickinger was the managerial agent of the principal and from our review of the record, it was established, as a matter of law, that he ratified and approved the acts of Bradford and Broussard. Thus, there was no issue of fact for the jury to determine with respect to ratification and approval.[6]

Point five is overruled.

■ Defendant challenges the jury's finding in answer to Special Issue No. 5 (the malice issue) with no evidence and great weight and preponderance points. As to the first of this series, we consider only the evidence supporting the finding along with all reasonable inferences to be drawn therefrom; as to the latter, we consider the record as a whole. It is unnecessary for us to lengthen this opinion by reciting additional facts as to

the incident. It is sufficient to say that the testimony of plaintiff and Taylor supported the finding of the jury that her apprehension and detention was malicious as defined by the court.[7]

In passing upon this question, the jury had before it evidence that Taylor had theretofore been convicted of forgery and passing and was even then on probation for such offense. Taylor likewise testified that she had a criminal record of several other offenses—"about six, maybe seven" —including "several shoplifting cases." When plaintiff went to the defendant's store with Taylor, she knew that Taylor "had been in shoplifting trouble." The jury likewise knew, from plaintiff's own testimony, that she had given untruthful information to her employer as to her whereabouts, both on the day in question and upon the day of trial. She told her employer that the reason she was absent from work was because she had a sick child on each occasion.

■ It is trite learning that the weight and probative force of evidence is entirely for the jury;[8] and that neither a trial court nor an appellate court may pass upon the credibility of witnesses or the weight to be given to their testimony.[9] Having reviewed the record under the established standards,[10] points six and seven are overruled.

Chief Justice Cureton in the famous trio of cases on the subject: Fort Worth Elevators Co. v. Russell, 123 Tex. 128, 70 S.W.2d 397, 400 (1934); Morton Salt Co. v. Wells, 123 Tex. 151, 70 S.W.2d 409 (1934); and Southwestern Gas & Electric Co. v. Stanley, 123 Tex. 157, 70 S.W.2d 413 (1934). These cases were all cited in *King,* supra, as being "analogous" to the rule set out in the *Restatement.* (234 S.W.2d at 405).

6. Restatement of the Law Second, Torts, § 909(d) [Tentative Draft No. 19 (March 30, 1973)], now reads: "(d) the principal or a managerial agent of the principal ratified or approved the act." As applied to the facts in the case at bar, the change in wording of subsection (d) does not affect the result which we have reached. See also, Restatement of the Law Second, Agency 2d, § 217C.

7. The accompanying instruction read: "A person acts maliciously when his actions are accompanied by ill-will, bad or evil motive, or such gross indifference to the rights of others as will amount to a willful or wanton act, done without just cause or excuse."

8. 36 Texas Digest, Trial, West lists dozens if not hundreds of appellate decisions announcing this general rule.

9. Id., has almost as many cases cited in support of the latter rule.

10. See, e. g., In re King's Estate, 150 Tex. 662, 244 S.W.2d 660 (1951); R. Calvert, " 'No Evidence' and 'Insufficient Evidence' Points of Error," 38 Texas L.Rev. 361 (1960).

In answer to Special Issue No. 2, the jury found that plaintiff was entitled to damages because of mental anguish suffered in the past and embarrassment and humiliation, but that she was not entitled to any damage for mental anguish which she may suffer in the future. The amount of such actual damages was fixed at $5,000. By point ten, defendant contends that such award is grossly excessive.

Plaintiff was escorted through a busy store by Bradford; she was forced to submit to a search of her person and belongings; she was removed through the main part of the crowded store by a uniformed police officer, taken to the city jail and imprisoned for several hours before being released on bond. She was forced to stand public trial for shoplifting. She says she was humiliated and embarrassed, and the jury accepted her testimony.

The jury awarded plaintiff $15,000 as exemplary damages, the definition accompanying the issue being set out in the margin,[11] and defendant now attacks this award as being grossly excessive.

■ After reviewing the record in its entirety with great care, we are of the opinion that the award of damages, both actual and exemplary, is excessive. But, having found no other error in the record requiring reversal of the cause, it becomes our duty to suggest a remittitur and the time within which it may be filed. Rule 440, T.R.C.P.

In approaching this task, we recognize the difficulties attendant upon the discharge of our mandatory duty imposed by the Rule and governing authorities.[12] Plaintiff has cited an imposing array of cases which have discussed whether or not a particular damage award was or was not excessive. There is little to be said for the practice of comparing verdicts in separate cases;[13] and indeed, it would seem most inappropriate for the court to consider evidence outside its own record notwithstanding prior precedent supports such practice.

But, we are left without any definitive guidelines in the exercise of this power. As said in Adams v. Houston Lighting & Power Company, 158 Tex. 551, 314 S.W.2d 826, 830 (1958): "[T]here is no rule prescribing the manner by which the court determines the amount of remittitur."

■ From our review of the record and the controlling authorities, we are of the opinion that the amount adjudged in favor of plaintiff as actual damages is excessive to the amount of $2,500, and that the amount adjudged in her favor as exemplary damages is excessive to the extent of $12,500. Plaintiff is granted ten days from the date of this opinion within which to file remittitur of these amounts. If such remittitur is filed, the judgment of the trial court will be reformed and affirmed. Otherwise, it will be reversed and the cause remanded. See and compare Hicks v. Matthews, 261 S.W.2d 207, 213 (Tex.Civ.App.—Beaumont 1953), reversed on other grounds, 153 Tex. 177, 266 S.W.2d 846 (1954).

Affirmed on condition.

11. " 'Exemplary damages' are damages which are allowed in addition to actual damages, that is, not as compensation to an injured party for his damages, but as a punishment to the wrongdoer and as a deterrent or example to others for the good of the general public."

12. See, e. g., Collins v. Gladden, 466 S.W.2d 629 (Tex.Civ.App.—Beaumont 1971, writ ref'd n. r. e.), and cases therein cited. See also, E. Smith, "Texas Remittitur Practice," 14 Sw.L.J. 150, 154 (1960).

13. *Collins,* supra (at 638); *Smith,* supra (at 157).