MOORE'S, INC., Appellant,

v.

Pablo S. GARCIA, Appellee.

No. 1468.

Court of Civil Appeals of Texas,
Corpus Christi.

June 30, 1980.

Rehearing Denied Aug. 29, 1980.

Abraham Moss, Law Offices of Guy H. Allison, Corpus Christi, for appellant.

Charles R. Cunningham, Corpus Christi, for appellee.

## OPINION

YOUNG, Justice.

The question of whether a jury's findings of false imprisonment and assault of a customer in a retail store by an off–duty police officer acting as a security agent are supported by the evidence is raised in this appeal. Moore's, Inc., the defendant below, brings this appeal to challenge the judgment of the trial court in favor of Pablo Garcia, the plaintiff below. We affirm.

A review of the pertinent facts reflects the following. Pablo Garcia, along with a friend, went to a local retail store, Moore's, Inc., to purchase several items for a party. After Garcia bought a pie, the two men left the store. Upon entering the car outside the store, Garcia's friend realized that he had forgotten to pay for some candy. The security guard of the store, Officer Bieniek, who was also an off–duty policeman, witnessed the alleged shoplifting of the candy and followed the men to their car. At the car, Officer Bieniek asked the appellee's friend to accompany him back into the store to inquire about the shoplifting.

Both men accompanied Officer Bieniek back into the store. The progression of events from this point varies according to the testimony offered by each side. Officer Bieniek testified that he took Garcia's friend into a small room in the back of the store and began his investigation. The investigation was interrupted by Garcia who banged on the door and loudly inquired about what was happening. Officer Bieniek allegedly explained to Garcia that his friend was under arrest, at which point Garcia struck a time clock in rage and stormed out of the store, cursing as he left.

Officer Bieniek followed Garcia out of the store and arrested him for destruction of private property, breach of the peace, and interfering with a lawful arrest. Several on–duty police officers soon arrived on the scene and took charge of the appellee, who was then under arrest by Officer Bieniek. He was handcuffed and taken to jail where he was booked, photographed and fingerprinted. Appellee remained in jail

for approximately three hours until he was released on bond. Later all charges were dismissed.

Garcia's version is similar except for the alleged striking of the time clock. He testified that he never struck the clock and that he only inquired why his friend was being arrested, and that Officer Bieniek rudely told him to leave the store and slammed a large metal door in his face. Upon leaving the store, Garcia was intercepted by Officer Bieniek who grabbed him by the arm and pushed him. Officer Bieniek informed him that he was under arrest for destroying the time clock, which was the first time he knew of the damage to the clock.

Garcia brought this suit seeking damages, both actual and exemplary, for the false imprisonment and assault committed with malice. Trial was to a jury, which found Moore's, Inc., guilty of false imprisonment and assault with malice because of the acts by its employee. Actual damages of $50,-000.00 and exemplary damages of $25,-000.00 were awarded by the jury. Based upon the jury verdict, the trial court rendered judgment in favor of Garcia. Moore's, Inc., appeals. Appellant has brought forward 21 points of error, complaining essentially of the lack of evidence to support the findings. The points of error will be grouped according to the issues submitted to the jury.

■ False imprisonment has been defined as ". . . the direct restraint by one person of the physical liberty of another without adequate legal justification." *Kroger Co. v. Demakes*, 566 S.W.2d 653 (Tex. Civ.App.–Houston [1st Dist.] 1978, writ ref'd n.r.e.); *J. C. Penney Co. v. Duran*, 479 S.W.2d 374, 379 (Tex.Civ.App.–San Antonio 1972, writ ref'd n.r.e.). See *Reicheneder v. Skaggs Drug Center*, 421 F.2d 307 (5th Cir. 1970). The essential elements of false imprisonment are: 1) a willful detention of the person; 2) against the consent of the party detained; and 3) a detention without authority of law. *Sanchez v. Garza*, 581 S.W.2d 258 (Tex.Civ.App.–Corpus Christi 1979, no writ).

■ Since there are two different interpretations of the events leading up to the arrest, the question of whether false imprisonment did occur was properly submitted to the jury in their role as the trier of facts. Explanatory instructions about the legal definition of false imprisonment were also submitted with this issue. The jury answered affirmatively. We hold that the evidence, as we have outlined it above, is factually and legally sufficient to support the jury's answer.

Appellant also challenges the contention by appellee that an assault was committed. A definition for assault was properly submitted to the jury embodying the definition found in § 22.01 of the Penal Code along with a special issue inquiring as to whether an assault was committed. The jury found that the employee of the appellant did commit an assault during the arrest.

■ It is the law of this State than an assault is both an offense against the peace and dignity of the State as well as an invasion of private rights. *Texas Bus Lines v. Anderson*, 233 S.W.2d 961 (Tex.Civ.App.–Galveston 1950, writ ref'd n.r.e.). For that reason, the definition of assault, whether in a criminal or civil trial, is the same. *Hogenson v. Williams*, 542 S.W.2d 456 (Tex. Civ.App.–Texarkana 1976, no writ). The definition set out by the Penal Code in § 22.01(a)(3) was correctly embodied in the instructions given to the jury which definition provides that a person commits an offense when he:

"(3) intentionally or knowingly causes physical contact with another when he knows or should reasonably believe that the other will regard the contact as offensive or provocative."

■ In that regard, the testimony by Garcia shows that Officer Bieniek grabbed the appellee by the arm and forcibly pushed him away from the car. Testimony by Officer Bieniek contradicts the shoving incident, but he does admit that he grabbed the appellee by the arm while arresting him. Such evidence of physical contact is factually and legally sufficient to support the jury's finding that an assault was committed.

■ Appellant also questions whether Officer Bieniek was acting within the scope of employment. Such contention involves the application of principles of agency law. The controlling statement of law relating to acts performed within the scope of employment is embodied in the Restatement of the Law of Agency, § 229: "The conduct must be of the same general nature as that authorized or incidental to the conduct authorized." The judicial application of this doctrine is found in an opinion by the Supreme Court: . . . the act of the servant must be in furtherance of the master's business or for the accomplishment of the object for which he was employed . . . not the result of insults or personal animosities. *Smith v. M System Food Stores*, 297 S.W.2d 112 (Tex.Sup. 1957). See also *Purvis v. Prattco, Inc.*, 595 S.W.2d 103 (Tex. Sup. 1980) and *Fisher v. Carrousel Motor Hotel, Inc.*, 424 S.W.2d 627 (Tex.Sup. 1967).

■ Public policy considerations also play an important part in holding a corporation liable for acts done by its employees in the course of business. A corporation cannot ". . . subject its patrons to the hazards of an irresponsible detective agency while escaping all danger of the legal ramifications adverse to itself." *Dupree v. Piggly Wiggly Shop Rite Foods, Inc.*, 542 S.W.2d 882, 889 (Tex.Civ.App.–Corpus Christi 1976, writ ref'd n.r.e.). See also *Damron v. C. R. Anthony Co.*, 586 S.W.2d 907, 914 (Tex.Civ.App.–Amarillo 1979, no writ). Only in those instances when an employee turns aside, no matter how short the time, from the prosecution of the employer's work to engage in an affair wholly his own does he cease to work the employer and relieve the employer from liability for his actions. *Hein v. Harris County*, 557 S.W.2d 366 (Tex.Civ.App.–Houston [1st Dist.] 1977, writ ref'd n.r.e.).

■ The record indicates that Officer Bieniek was acting within the scope of his employment. Depositions introduced into evidence reflected that Officer Bieniek was an employee of the appellant whose job was

to maintain store security. The president of the appellant corporation testified that Bieniek was employed to prevent shoplifting. He further testified that he approved of and condoned all acts done by Bieniek. Bieniek himself testified that the verbal instructions he received as to his employment were to ". . . protect the store from inside internal theft as well as watch for shoplifting in the store." The arrest of the appellee on that evening was a part of his job according to his testimony.

■ It is apparent that the duties of Officer Bieniek in his employment with the appellant involved activities which might require exercising force to fully carry out his duties. In those situations in which an employee may need to use force to carry out the duties of his employment, the employer is not relieved of liability if greater force is used than necessary. *Texas & P. Ry. Co. v. Hagenloh*, 247 S.W.2d 236 (Tex. Sup. 1952); *Levine v. Enlow*, 462 S.W.2d 50 (Tex.Civ.App.–Waco 1970, no writ); *Kroger Co. v. Warren*, 420 S.W.2d 218 (Tex.Civ. App.–Houston [1st Dist.] 1967, no writ).

The record is uncontroverted that Officer Bieniek was acting within the scope of his employment when the incident occurred. It is further apparent that the corporation ratified such acts. Therefore, there was no question of fact in that regard which was required to be submitted to the jury for determination. *K–Mart No. 4195 v. Judge*, 515 S.W.2d 148, 153 (Tex.Civ.App.–Beaumont 1974, writ dism'd).

■ Special issues questioning whether the false imprisonment and assault were committed with malice were submitted to the jury, which they answered in the affirmative. Appellant challenges these findings as factually insufficient. After our examination of the record in this case, we find *no error* in the jury's findings that the false imprisonment and assault were committed with malice.

Appellee was arrested for allegedly disturbing the peace and destruction of private property. The breach of the peace supposedly occurred when the appellee began arguing about the arrest of his friend for shoplifting candy. The destruction of private property charge, according to Officer Bieniek, was the result of the appellee hitting a time clock with his fist.

Testimony by other witnesses at the trial does not support the violations of law as alleged by Officer Bieniek. As to the alleged breach of the peace, there is no evidence that the appellee ever threatened or actually undertook violent acts which disturbed the tranquility of the community. It does appear that some shouting did occur over the arrest of the appellee's friend for shoplifting, but the appellee never threatened or committed any violent acts. Additionally, the jury was properly instructed as to both the definition and statement of the law concerning a breach of the peace.

About the alleged destruction of private property, no witness, other than Officer Bieniek, testified that the appellee broke the time clock by hitting it, even though one employee of appellant testified that he had a clear view of the entire incident. No other employees of the appellant who were working on that evening substantiated the allegations of destruction of private property. Furthermore, no bills were submitted for either the repair or replacement cost of the clock. Of course Garcia said that he did not harm the clock.

In summary, there is ample evidence to contradict the appellant's contention that the arrest was justified because of violations of the law. The evidence, therefore, supports the jury's findings that the acts were committed with malice. *Gibson Discount Center, Inc. v. Cruz*, 562 S.W.2d 511, 513 (Tex.Civ.App.–El Paso 1978, writ ref'd n.r.e.).

■ Error is also asserted in this appeal about the failure of the trial court to submit requested instructions as follows:

"Defendant's Requested Instruction # VIII:

The following is an offense in this State:

It is an offense for any person to intentionally or knowingly make an unreasonable noise in a public place.

Defendant's Requested Instruction # IX:

The following is an offense of this State:

It is an offense for any person to willfully oppose or resist an officer in arresting or attempting to arrest any person where the law authorizes or requires the arrest to be made."

Concerning both requested instructions, we find no error in the refusal to submit such instructions in that the trial court did submit other instructions concerning the matters raised in the requested instructions. The case was fairly submitted under the requirements of Rule 277, T.R.C.P.

In that we have held that the evidence supports the answers to the special issues on liability submitted to the jury, we now reach the issue of damages. The jury awarded the appellee $50,000.00 for actual damages sustained as a result of the false imprisonment and assault. The jury also awarded the appellee $25,000.00 in exemplary damages. The appellant attacks the damage findings on grounds that the evidence is factually insufficient to support the findings; that the awards are excessive; and that there is an absence of a finding of ratification.

The amount of damages awarded to an injured plaintiff is largely left up to the jury for their determination. The jury may look to all injuries of the plaintiff, which are not limited to those physical in nature but also include the more intangible injuries of humiliation, shame, fright, and anguish. *J. C. Penney Company v. Duran*, supra at 382. In considering all of these injuries, both tangible and intangible, the jury must attempt to arrive at an award which will fully compensate the injured party. The jury is vested with this authority because the law is inadequate in evaluating all the injuries sustained by an injured party. As this Court has held in a similar case, ". . . [t]he law has not furnished us with any fixed standard by which to measure an award for damages which resulted from mental anguish, embarrassment, and humiliation for false arrest."

*Mitchell v. Jones*, 548 S.W.2d 813 (Tex.Civ. App.–Corpus Christi 1977, no writ).

In *Dover Corp. v. Perez*, 587 S.W.2d 761 (Tex.Civ.App.–Corpus Christi 1979, writ ref'd n.r.e.), we recognized and applied two approaches in determining whether damages are excessive; first, looking to precedent from other cases and second, looking to the facts and circumstances of each case. Further, we said that the practice of comparing awards of the other cases is unsatisfactory because of the factual differences in the cases and because of the continued erosion of the value of the dollar.

Only in those cases where it is evident that the award for damages is the result of passion, prejudice, or other improper motive or are so excessive as to shock the sense of justice in the minds of the appellate court will the jury's verdict be overturned. *J. C. Penney Company v. Duran*, supra at 382.

To be overturned by an appellate court, exemplary damages must also be the result of passion, prejudice, corruption or abuse. *Gibson Discount Center, Inc. v. Cruz*, supra. Exemplary damages should also be reasonably apportioned to the actual damages sustained. *Skillern & Sons, Inc. v. Stewart*, 379 S.W.2d 687 (Tex.Civ.App.– Fort Worth 1964, writ ref'd n. r. e.). When exemplary damages are awarded against a corporate defendant for the acts of one of its employees, it is further required that the corporate defendant has ratified or approved of the act. *Purvis v. Prattco, Inc.*, supra at 231. *K–Mart No. 4195 v. Judge*, supra at 153.

There was considerable evidence at the trial about the damages the appellee sustained as a result of the false imprisonment and assault. In summary, there is testimony that neighbors, long–time friends, family members, employer, and the wife of the appellee all noticed that the appellee was very upset over the incident. Much shame and humiliation were caused by the incident, according to the wife, which altered the character of the appellee and affected his business and familial relationships. The appellee testified that he

suffered from depression, that his self–image was impaired, and that he became angry without provocation.

The evidence also indicates that the corporate appellant did ratify the acts of its employee, Officer Bieniek. Appellant's night manager did not repudiate any of the acts of Officer Bieniek, as far as the record reflects, and the president of the corporation testified that the employee had never done anything that he did not approve of. This evidence of ratification is sufficient to hold the corporation liable for both exemplary and actual damages.

We have carefully considered all of appellant's points of error and we overrule all of them.

The judgment of the trial court is affirmed.

BISSETT, Justice, concurring and dissenting.

I concur with the holding which awarded the plaintiff Garcia $25,000.00 as exemplary damages. I respectfully dissent from the part of the opinion by the majority which awards the plaintiff Garcia $50,000.00 for actual damages.

The incident which gave rise to this suit occurred on February 20, 1976. The majority opinion does not set out any of the evidence. I believe that the evidence relating to actual damages should be discussed in detail.

The conclusions 1) "considerable evidence at the trial about the damages" sustained by Garcia; 2) "in summary, there is testimony that" "neighbors, long–time friends, family members, employer, and the wife" of Garcia "all noticed that the appellee was very upset over the incident"; and 3) "much shame and humiliation were caused by the incident according to the wife, which altered the character of the appellee and affected his business and familial relationships," as stated in the majority opinion, are based solely on the testimony of Mr. Otis Southall, a neighbor and friend of Garcia; Mr. Danny Hernandez, who was married to a sister of Garcia's wife; Mrs. Sylvia Garcia, wife of Garcia; and the plaintiff Garcia. As I read the record, they were the only witnesses who testified to matters relating to actual damages.

Mr. Southall, upon learning that Garcia had been arrested, went to the jail. In response to the inquiry concerning Garcia's appearance "at that time," he responded:

"Well, he was pretty well shook up . . he was pretty well embarrassed over the whole situation."

That is the extent of his testimony concerning any basis for an award of actual damages.

Mr. Hernandez, when queried as to whether the incident had caused him to notice any change in Garcia's personality, answered "Yes," based on his observation:

"A Well, sometimes I go over and ask him if he wants to drink a few beers, he don't want to. He don't–He's not up to it. He don't feel like it. And I guess it bothers him, and I asked him if–you know, I joke around with him and ask him, 'Well, they're not going to lock you up.' He don't want to say anything anymore. He don't want to go drink beer. He just don't want to talk about it."

Nothing else appears in the transcription of his testimony which has any probative value with respect to actual damages.

Mrs. Sylvia Garcia, in response to the following questions, testified:

"Q Did you ask him what happened:

A I asked him that night, and he told me he didn't want to talk about it.

Q Did you press the issue?

A No, I didn't.

Q Why not?

A Because I knew he was upset and depressed.

Q How long was it before you were able to talk to him?

A About three months later he finally told me what happened.

Q What was his appearance then as far as you could tell? When he was telling you when he finally told you?

A Later?

Q Well, what was his demeanor? How was his facial expression? Did he

seem upset or anything when he was telling you three months later?

A  He was very upset. He didn't really want to tell me, but I really pressured him into telling me. Because they kept asking me, you know, why he had been arrested and I didn't know why. All I could say was for shoplifting because that's what they had told me."

She further testified that her kinsmen and numerous friends knew about the incident and that this fact upset her husband, and that when the subject was raised, "he withdraws from everybody." During the period of the three months following February 20, 1976, and in response to the question if she had noticed any changes "in Mr. Garcia during this period of time," she replied:

"A  He's a lot quieter. He don't talk very much like he used to. He's not very active like we were before. We used to go out dancing and partying and we don't do it any more. He just doesn't want to do it.

He doesn't want to associate with his friends very often. It's once in a while that we do go out."

The foregoing statements constitute all that she said which has any bearing on the issue of actual damages.

Mr. Garcia, plaintiff, upon being told that he was being transported to the county jail, and in answer to the question "How did you feel mentally about this", said:

"I get very depressed because I think I got arrested for something I didn't do . . . I was very upset. I was angry."

When he was being taken out of the officer's car upon reaching the jail, he said that he felt like a "common criminal," and that the handcuffs caused his arms and hands to hurt. He further testified:

"I get depressed sometime at work . . I'll just put my work aside when I start to thinking about it."

When asked:

"Do you know anyway that you can really shake this stigma at all ever?";

he replied:

"No, sir, I don't."

The remainder of his testimony deals with matters other than those which pertain to the award for actual damages.

There is no testimony in this case from plaintiff's "employer." The only neighbor and friend of plaintiff who testified was Mr. Southall. The only family member who testified was Mr. Danny Hernandez who was related to plaintiff by marriage. There is no testimony from anyone other than the plaintiff that the incident affected the business of plaintiff; on the other hand, plaintiff said that his employer was most understanding of the impact of the incident upon plaintiff and told him: "he wanted to help out." There is no testimony that the incident had any effect upon plaintiff's reputation. Plaintiff admitted that his friends "trust him," that his "character is beyond repute," and that his boss had not "degraded" him for "what's happened." There is no evidence which supports the statement in the majority opinion that the incident "altered the character of the appellee."

In *Mitchell v. Jones*, 548 S.W.2d 813 (Tex. Civ.App.–Corpus Christi 1977, no writ), the jury awarded plaintiff Jones the sum of $15,000.00 as actual damages for mental anguish, embarrassment and humiliation resulting from false arrest. This Court held that the amount of actual damages awarded to Jones was excessive in the amount of $10,500.00. We suggested a remittitur of said sum of money, which was duly filed by the plaintiff.

Concerning actual damages, the only factual differences in the case at bar and the *Jones* case are relatively minor. In the instant case, the plaintiff Garcia, after his arrest at Moore's store, was handcuffed and taken to jail where he was booked, photographed and fingerprinted; he remained in jail for approximately three hours. In the *Jones* case, the plaintiff Jones was arrested in the interior of the Globe Department Store; was paraded (while under arrest) through the middle of the store; was observed by fellow employees; was "patted down" by the deputies outside the store in

the presence of third parties; was taken to jail; and was in the process of being booked when he was released after about 15 minutes of interrogation. Jones was not the victim of an assault; was not handcuffed at the store, was never fingerprinted or photographed at the jail; and was not placed in confinement. However, Jones was scared, worried and upset over what had happened; had the feeling that his fellow employees were watching him; did not believe that he, in fact, established his innocence as to any wrong doing in the eyes of other employees' until about a week after the incident; and was affected by the incident for a period of about three months. In each case, the actual damages which were awarded were based on mental anguish, embarrassment and humiliation. Neither plaintiff had any real physical injury inflicted on him by the arresting officer; neither sustained a loss of earnings or earning capacity; and neither consulted a doctor or took any medication as a result of any emotional or mental trauma from the incident..

The facts in this case which led to the arrest of the plaintiff Garcia are more aggravated than are the facts which led to the arrest of the plaintiff Jones in the *Jones* case. For that reason, plus the fact that the dollar is ever–decreasing in value, the plaintiff Garcia is entitled to a recovery of substantially more money for actual damages than the amount of $4,500.00 which was ultimately recovered by the plaintiff Jones in the *Jones* case. However, having considered all of the evidence in the light most favorable to the jury's award, I believe that the award of $50,000.00 to the plaintiff Garcia for actual damages is unreasonable under the evidence in this case, and was arrived at by some improper motive such as passion, prejudice, or speculation. In my opinion, the award is excessive by the amount of $35,000.00. I would suggest a remittitur in that amount of money.