MONTGOMERY WARD & COMPANY, Appellant,

v.

Jesus M. GARZA, Appellee.

No. 13–82–218–CV.

Court of Appeals of Texas, Corpus Christi.

Nov. 3, 1983.

Juan Rocha, McAllen, for appellant.

A.A. Munoz, II, McAllen, for appellee.

Before BISSETT, UTTER and GONZALEZ, JJ.

## OPINION

GONZALEZ, Justice.

This is an appeal from a judgment in a false imprisonment case. After a jury trial, appellee was awarded $50,000 actual damages. Appellant contends that the trial court erred in not granting its motion for instructed verdict and complains that the verdict is excessive. We affirm.

## FACTS

Garza was shopping with his son and grandchildren at the Montgomery Ward & Co., Inc., retail store in Pharr, Texas. A security guard allegedly observed Garza secrete an unknown item of merchandise in his coat pocket and leave the store without paying for it. Security personnel approached him and requested he return to the store where he was questioned. No merchandise was found on Garza nor was any discovered along the path he had taken.

Garza was requested to sign a release of liability form. He refused and demanded that the police and his lawyer be called. Security personnel told him the interview and detention were terminated and refused his requests to call either the police or his attorney. Garza then left.

The security investigator who made the initial observation leading to Garza's arrest was subsequently placed by appellant on thirty-days probation for an "improper detention."

## FALSE IMPRISONMENT

In appellant's first point of error, it alleges the trial court erred in refusing to grant its motion for instructed verdict citing as grounds that plaintiff failed to establish the detention was without legal authority. In reviewing whether the trial court erred in refusing to instruct a verdict in defendant's favor, we follow the rule stated in *Henderson v. Travelers Insurance Co.*, 544 S.W.2d 649 (Tex.1976):

> In an instructed verdict case, our task is to determine whether there is any evidence of probative force to raise fact issues on the material questions presented. Upon review, we must consider all of the evidence in its most favorable light in support of the plaintiff's position and discard all contrary evidence and inferences.

*Henderson* at 650.

Implicit in appellant's allegation that the trial court erred in refusing to instruct a verdict in its favor is an assertion by appellant that there was no evidence to support inquiry by the jury into the issue of whether plaintiff was detained without legal authority.

> A contention that an issue should not have been submitted, or that a finding of the jury should be disregarded, because of the insufficiency of the evidence is subject to only one construction. It can mean only that there is no evidence to warrant submission of the issue or support the jury's finding.

*Garza v. Alviar,* 395 S.W.2d 821, 824 (Tex. 1965).

In considering a "no evidence" point of error, we will follow the well established test set forth in *Glover v. Texas General Indemnity Company,* 619 S.W.2d 400 (Tex. 1981); *Garza v. Alviar,* 395 S.W.2d 821 (Tex.1965); *Allied Finance Company v. Garza,* 626 S.W.2d 120 (Tex.Civ.App.—Corpus Christi 1981, writ ref'd n.r.e.); CALVERT, *No Evidence and Insufficient Evidence Points of Error,* 38 Tex.L.Rev. 359 (1961). If there was any evidence of each of the elements set out below, then the trial court was correct in overruling appellant's motion for instructed verdict.

■ Civil liability for false arrest or imprisonment is imposed for the wrongful interference with a person's freedom. The essential elements the plaintiff must prove have been well established. They are: (1) a willful detention of the person; (2) against the consent of the party detained; and (3) a detention without authority of law. *Moore's, Inc. v. Garcia,* 604 S.W.2d 261 (Tex. Civ.App.—Corpus Christi 1980, writ ref'd n.r.e.); *Sanchez v. Garza,* 581 S.W.2d 258 (Tex.Civ.App.—Corpus Christi 1979, no writ).

■ It is undisputed that Garza was willfully detained against his will. However, appellant argues that there is no evidence the detention was without authority of law. Garza testified that he had no intention or the slightest idea to take anything that belonged to Montgomery Ward and never did. His explanation of what apparently aroused the suspicion of the store employee was that he took his billfold out of his pocket, removed his Wards charge card in contemplation of a purchase, reconsidered, placed the charge card in his sports coat pocket, and then left the store.

We hold that plaintiff's testimony coupled with appellant's own case report wherein Wards placed the security guard that detained Garza on probation for "improper detention" was sufficient evidence to create a fact issue for the jury on the element of detention without probable cause.

Appellant complains that the trial court erred in refusing its motion for instructed verdict at the close of plaintiff's case in chief. Notwithstanding our holding that Garza's testimony and Ward's case report were sufficient to create a jury issue, and assuming arguendo that they were not, any error on the part of the trial court in refusing to instruct a verdict in appellant's favor was waived.

■ When a defendant offers evidence after his motion is denied, he thereby waives his earlier motion and when he later moves again the new motion is determined upon all the evidence, regardless of by whom offered. *Vermillion Construction Co. v. Fidelity & Deposit Co.,* 526 S.W.2d 744, 748 (Tex.Civ.App.—Corpus Christi 1975, no writ); *Shoppers World v. Villarreal,* 518 S.W.2d 913, 918 (Tex.Civ.App.—Corpus Christi 1975, writ ref'd n.r.e.). 3 McDonald Texas Civil Practice § 11.26 (1983).

The security guard was called to testify by appellant. He said that Garza shoplifted merchandise from appellant's store. His explanation for not finding the item in his search was that he momentarily lost visual contact and Garza "dumped" the item. It was the jury's prerogative to disbelieve this testimony. Appellant's first point of error is overruled.

## REMITTITUR

■ Appellant's second point of error alleges the verdict is excessive and urges us to reduce the award from $50,000 to $15,000. We decline to do so. In this connection, we note that the jury refused any exemplary damages.

In reviewing the award of actual damages given by a jury in these types of cases, the Court stated in *Moore's, Inc. v. Garcia,* 604 S.W.2d 261 (Tex.Civ.App.—Corpus Christi 1980, writ ref'd n.r.e.):

The amount of damages awarded to an injured plaintiff is largely left up to the jury for their determination. The jury may look to all injuries of the plaintiff which are not limited to those physical in nature but also include the more intangi-

ble injuries of humiliation, shame, fright, and anguish.

"Only in those cases where it is evident that the award for damages is the result of passion, prejudice, or other improper motive or one so excessive as to shock the sense of justice in the minds of the appellate court will the jury's verdict be overturned." *Moore's, Inc.* at 266. With this standard in mind, we turn to the evidence adduced at trial.

Garza testified that he started shaking as he was escorted back into the store and, secondly, that he felt embarrassed and cowardly. He described his attitude toward himself as feeling he was a dead man, a nobody, trash, a man deprived of his dignity and pride.

Jaime Garza, appellee's son, testified that his father appeared confused, shocked, embarrassed, and more than anything, afraid, after the incident. He testified that his father withdrew from his friends, and changed his eating habits.

Dr. Suarez, a physician specializing in neurology and psychiatry, testified that in his opinion Garza suffered from an affective type of disorder, that is, he was not capable of overcoming the emotional impact of the false arrest. Dr. Suarez also testified that Garza's epilectic condition could be aggravated by the events that transpired. He was further of the opinion that psychiatric treatment would be desirable and that the cost of that treatment for three to six months would be $1,500 to $2,000.

Dr. Caballero, appellee's longtime personal physician, testified that appellee suffered from acute anxiety and depression after the incident. He attributed the aggravation of appellee's epilepsy and increased number of convulsions to the incident. He stated that before the incident, Garza's condition was under control; after the incident, Garza had frequent attacks and it was necessary not only to increase the medication he had previously prescribed but to also add an additional tranquilizer.

Finally, Garza's wife took the stand and testified that Garza underwent a change in character. He avoided his friends, was short-tempered, and had "sexual problems."

As an appellate court, we have only the cold record before us. The jury was able to observe the witnesses and pass on their credibility. We cannot say that when confronted with the testimony set out above, the jury's verdict was the result of passion, prejudice, or an improper motive. Also, under these facts, the award is not so excessive that it shocks our sense of justice. Appellee's second point of error is overruled.

The judgment of the trial court is AFFIRMED.