**DAYTON HUDSON CORP., Appellant,**

v.

**Janice ALTUS, Appellee.**

No. 01–85–0030–CV.

Court of Appeals of Texas,
Houston (1st Dist.).

Feb. 20, 1986.

Rehearing Denied Aug. 14, 1986.

Ron A. Sprague, McLeod, Alexander, Powel & Apffel, Galveston, for appellant.

Jimmy Phillips, Jr., Angleton, for appellee.

Before JACK SMITH, HOYT and DUGGAN, JJ.

## OPINION

JACK SMITH, Justice.

This is a damage suit for false imprisonment and malicious prosecution. Based on jury findings, the court entered judgment awarding the appellee $150,000 in actual damages, $225,000 in punitive damages, and $2,739 in attorney's fees for the defense of the criminal action.

The appellee was shopping at a Target retail store in Harris County when two of the appellant's security guards observed her looking at and handling various merchandise in different parts of the store. After the appellee had paid for some items and was starting to leave, she was detained by one of the guards outside the store.

Upon the guard's request, the appellee agreed to accompany the guard to the store's security office. The second guard, who had observed the appellee, joined the two as they entered the office. Both guards accused the appellee of stealing and wanted to see the contents of her purse. The appellee denied that she had stolen anything and initially, refused to show them the contents of her purse. However, when she later decided to empty her purse, the guards observed three Pentel pens and a glue pen which they claimed were stolen. These items had a value in excess of $10; however, the guards located only one empty package from which a pen could have been taken. There is no evidence in the record to indicate the guards made further efforts to specifically identify the pens as merchandise from the store.

Since the appellant's procedure was to prosecute anyone who steals merchandise over the value of $10, the police were called. When the police arrived, the appellee was placed under arrest and taken to jail. Upon arriving at the jail, the appellee was searched, assigned to a jail cell, and released on bail approximately nine to eleven hours later.

The appellee was prosecuted for shoplifting the glue pen and one Pentel pen, and after a jury trial, she was found not guilty. Thereafter, this suit was filed.

In two points of error, the appellant contends that the trial court erred in submitting special issues numbers two, four, five, and six because there was no evidence or insufficient evidence to support the submission of these issues or the jury's answers to them. Those issues were as follows:

## SPECIAL ISSUE NO. 2

Do you find from a preponderance of the evidence that Defendant, through its agents and employees, acting with malice and without probable cause, caused (directly or through the Defendant's aid or cooperation) the prosecution against Plaintiff, Jancy Altus, for theft, which resulted in acquittal?

ANSWER: We do.

## SPECIAL ISSUE NO. 4

What sum of money do you find from a preponderance of the evidence to be the damages suffered by Jancy Altus, if any, because of the actions of the Defendant through its agents and employees? You may take into account the following elements of damage, if any, and none other:

a. Physical pain and mental anguish, humiliation, embarrassment and loss of reputation, in the past, if any.

b. Physical pain and mental anguish, humiliation, embarrassment and loss of reputation, which in reasonable probability she will suffer in the future, if any.

Answer in Dollars and Cents.

Answer: $150,000.00

## SPECIAL ISSUE NO. 5

Do you find from a preponderance of the evidence that the Defendant acted recklessly or willfully and maliciously with a design to oppress and injure the Plaintiff in regards to the apprehension and detention found by you in this case, if any?

Answer: We do.

## SPECIAL ISSUE NO. 6

What sum of money, if any, do you find from a preponderance of the evidence should be awarded as exemplary damages in favor of Jancy Altus and against the Defendant, Dayton Hudson Corporation?

Answer in Dollars and Cents.

Answer: $225,000.00

The appellant also contends, in two other points of error, that the trial court erred in denying its motion to disregard the findings under the above special issues and in denying its motion for judgment non obstante veredicto.

In reviewing no evidence contentions, an appellate court must consider only the evidence and inferences that tend to support the findings and disregard any evidence and inferences to the contrary. *Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex.1965). When a factual insufficiency question is raised, all the evidence must be considered. *In re King's Estate*, 150 Tex. 662, 664–65, 244 S.W.2d 660, 661 (1951).

■ The appellee testified that she had been shopping in the Target store and had made a purchase. As she was leaving the store, she was detained by a person who identified himself as a security officer for the store. She also testified that another security guard later came into the office where she was being held. One of the guards was male and the other was female. She stated that the male security officer interrogated her by himself. She also stated that the security guard would not allow her to phone a friend, the police, or a lawyer, but that later, after she had fabricated a story about needing to make arrangements for her children's care, her request to use the phone was granted. She said the officer requested her to sign a mutual release of liability form, but she refused.

After the police arrived, she was escorted through the store while other store customers watched. She was then taken by the police to the jail where she spent between nine and eleven hours in a jail cell.

The testimony given by the appellant's security officers concerning the appellee's detention and her actions was varied, inconsistent, and contradictory. Each officer gave different versions of what occurred, and the testimony conflicted in some respects with their prior testimony during the appellee's criminal trial.

Examples of the inconsistencies and conflicts between the officers' testimony are as follows:

(1) the package containing the nail glue was retrieved immediately after the appellee placed it behind a toaster versus after the appellee was taken to the security office;

(2) the time the appellee was apprehended varies;

(3) the appellee emptied the contents of her purse versus a security guard grabbed her purse;

(4) the length of time the appellee was detained in the security office;

(5) the time when the police were phoned;

(6) which security officer left the office to call the police;

(7) the reasons why the police were called;

(8) the appellant's procedures in permitting a suspect to use the phone and who, if anyone, may be called; and

(9) whether a manager was present during the questioning of the appellee.

In addition to the foregoing, it is undisputed that after the security guards had an opportunity to see the contents of the appellee's purse and found three Pentel pens and a nail glue pen, which they thought the appellee had shoplifted, they made no effort to ascertain whether these items were merchandise from their store. The officers knew that the appellee had denied taking the merchandise from their store, and one officer testified that these items could be purchased at other retail stores. However, the officers recovered only one package from which the pen could have been taken, and they made no effort to "match up" or identify if one of the pens in the appellee's purse could have been taken from the package they had recovered.

The fact that the store policy was to prosecute only if the value of the stolen merchandise exceeded $10 and that the value of the merchandise for which the appellant had the appellee prosecuted was only $7 shows a deviation from the appellant's policy. No explanation was offered by the appellant to show why the appellee's case was made an exception to the store's regular policy for prosecuting shoplifters.

There is also evidence in the record that the female security guard, after the police had arrived but before they had taken the appellee to jail, tried to bring other merchandise into the security office where the appellee had been detained. One witness testified that this guard had the merchandise in her hand behind her back so that the Houston police officers could not see it. This witness and the appellee attempted to call the police officers' attention to what the security guard was trying to do.

We hold that the above evidence was sufficient to submit the issues of false arrest and malice to the jury.

■ The appellant also asserts that the trial court erred in entering judgment for $150,000 in actual damages and $225,000 in exemplary damages because the awards are excessive and the trial court should have awarded a new trial or granted its motion for a remittitur.

In addition to the facts heretofore set forth, the appellee testified that when she arrived at jail she was placed on a bench beside other persons who had been arrested. She stated that some of the prisoners appeared to have been on dope and the majority of the prisoners were dirty and smelled. She stated that while she was being booked by a female person, she was asked "what are the other charges." She stated that she responded that this was all. Thereafter, she stated, the female officer acted like she [the appellee] was lying.

The appellee testified that after she had checked in her jewelry and purse, she was taken to a room where a female officer searched her. She stated the female officer physically searched her after she had pulled her blouse out and unhooked her bra. She said the officer started with her chest, felt all around her waist, all down her legs, and inside her legs. Thereafter, she was placed in a jail cell with another female prisoner who had been arrested for possession of dope and appeared to be coming off of drugs. The prisoner was crying and kept hollering at the guard for aspirin, but no guard responded.

The appellee described the jail cell as being dirty and smelly. It consisted of two bunks and a small pillow. It also had a commode without a seat or cover which she described as filthy. Later on that evening, three other female prisoners were placed in the cell.

The appellee stated that when she was placed in the jail cell, she had on high heels. Even though her feet hurt, she would not take off her shoes because of the dirt and filth in the cell. She stated the other female prisoners talked about the food being dirty and different diseases that had been caught. She was finally released from the jail at approximately 3:00 a.m. the next morning.

The appellee did not seek help from a physician or psychiatrist after her release; however, she did seek help from her parish priest. She stated that she did not know how to tell her children that she had been arrested but eventually did so. She said she quit teaching Sunday School at her church; that her children were teased by other children about the event; that she lost time from work because of the emotional effects of the arrest and imprisonment; that she was forced to relive the entire sequence of events during the criminal trial; and that she still suffered emotional problems at the time of the present trial.

■ There is no certain measure of damages for the varying degrees of harm incurred by a person who has been maliciously prosecuted or falsely imprisoned. The measure of damages usually rests in the composite judgment and conscience of the jury. *Dahl v. Akin,* 645 S.W.2d 506, 521 (Tex.App.Amarillo 1982), *aff'd,* 661 S.W.2d 917 (Tex.1983), *cert. denied,* 466 U.S. 938, 104 S.Ct. 1911, 80 L.Ed.2d 460 (1984). It is only in those cases where it is evident that the jury's award is the result of passion, prejudice or other improper motive, or is so excessive as to shock an appellate court's sense of justice, that the verdict should be overturned. *Moore's, Inc. v. Garcia,* 604 S.W.2d 261, 266 (Tex.Civ.App.—Corpus Christi 1980, writ ref'd n.r.e.). Further-

more, it is not the prerogative of the appellate court to substitute its own judgment for that of the jury, even if that court might have awarded a lesser sum as a fact finder. *Eans v. Grocers Supply Co., Inc.,* 580 S.W.2d 17, 23 (Tex.Civ.App.—Houston [1st Dist.] 1979, no writ).

Although the damages awarded to the appellee are larger than the usual awards made in false imprisonment and malicious prosecution suits, we find that there is sufficient evidence to support the findings of the jury and the judgment of the court.

■ The appellant also contends that the trial court erred in awarding the appellee exemplary damages as a matter of law. This issue was not raised at the trial, and under Rules 274 and 275 of the Texas Rules of Civil Procedure, it was the appellant's burden to distinctly point out this error to the trial court. Tex.R.Civ.P. 274, 279. This was not done.

■ The appellant also contends that it raised this issue in its motion to disregard findings on special issues and in its motion for judgment non obstante veredicto. This is not the proper method for preserving error regarding the submission of special issues. Unless there is an agreement between the parties and the court to relax the rules of civil procedure, the proper time to make objections to the court's charge is before the court has submitted the charge to the jury. Tex.R.Civ.P. 274, 279.

■ The appellant also complains that it preserved error by requesting the trial court to make findings of fact and conclusions of law "regarding omitted issues constituting component elements of recovery in the area of punitive damages which were answered by the jury." There is no requirement or authority in the rules for findings of fact and conclusions of law in a jury trial. *Conrad v. Judson,* 465 S.W.2d 819, 827 (Tex.Civ.App.—Dallas 1971, writ ref'd n.r.e.), *cert denied,* 405 U.S. 1041, 92 S.Ct. 1312, 31 L.Ed.2d 582 (1972). Rule 279 only authorizes a trial court to file written findings if they support the judgment that was rendered. *Heights Saving Ass'n. v.*

*Cordes,* 412 S.W.2d 372, 375 (Tex.Civ.App. —Houston 1967, no writ); Tex.R.Civ.P. 279.

■ In another point of error, the appellant contends that the trial court erred in submitting special issues number two and four because the evidence establishes, as a matter of law, that there was probable cause to detain the appellee and that the appellant did not cause the prosecution. The appellant's only objection at the time of trial was to the lack of pleadings and evidence to support the submission of these issues, and the error raised on appeal does not comport with that which was made at trial. If a litigant fails to specifically point out the matter to which he is objecting, as well as the ground of his objection, his complaint is waived on appeal. *Davis v. Campbell,* 572 S.W.2d 660, 662–63 (Tex. 1978); Tex.R.Civ.P. 272, 274. This objection is overruled.

The appellant also complains that the court submitted erroneous instructions on issues and that the court should have used the instruction of probable cause that it submitted.

A trial court has considerable discretion in submitting instructions, and an instruction will not be held erroneous if it is reasonably clear and enables the jurors to understand the phraseology and words contained therein. *D.W.L. v. M.J.B.C.,* 601 S.W.2d 475, 477–78 (Tex.Civ.App.—Houston [14th Dist.] 1980, writ ref'd n.r.e.).

■ The submitted definition is almost identical to the definition of probable cause approved by the Texas Supreme Court in *Akin v. Dahl,* 661 S.W.2d 917, 921 (Tex. 1983), *cert. denied,* 466 U.S. 938, 104 S.Ct. 1911, 80 L.Ed.2d 460 (1984). In the instant case, when the definition of probable cause is read as a whole, it restricts the jury's consideration of events to a particular time frame, and it incorporates some of the appellant's tendered instruction. We consider the appellant's tendered instruction to be a different shade of the same definition that was being given. A case may not be reversed because of the failure to submit a different shade of the same issue. *Bachynski v. Fox & Co.,* 662 S.W.2d 771, 774 (Tex.App.—Houston [14th Dist.] 1983, no writ). We overrule these points.

■ In another point of error, the appellant complains that the trial court erred in refusing to allow its expert witnesses to testify on the existence or lack of probable cause. The appellant failed to make a bill of exceptions or otherwise show what the excluded testimony would have been. Under these circumstances, the error, if any, is not reversible. *Huckaby v. Henderson,* 635 S.W.2d 129, 131 (Tex.App.—Houston [1st Dist.] 1981, writ ref'd n.r.e.); Tex.R. Civ.P. 372.

■ The appellant also contends that it was error for the trial court to permit the appellee to make a trial amendment increasing the amount of the exemplary damages which were sought by the appellee. Although the appellant contends that there is not a showing that leave of court was obtained by the appellee, it is obvious that the trial court granted leave to file the amendment because the damages awarded in the judgment exceed the amount of exemplary damages sought by the appellee prior to the trial amendment.

Rule 66 of the Texas Rules of Civil Procedure permits a trial judge to "freely" allow amendments to a party's pleadings "when the presentation of the merits will be subserved thereby and the objecting party fails to satisfy the court that the allowance of such amendment would prejudice him in maintaining his action or defense upon the merits." Tex.R.Civ.P. 66. This rule gives the judge broad discretion and will only be overturned when the judge has abused his discretion. *Fenno v. Jacobe,* 657 S.W.2d 844, 848 (Tex.App.—Houston [1st Dist.] 1983, writ ref'd n.r.e.). We find no abuse of discretion, and this point of error is overruled.

■ In another point of error, the appellant asserts that the trial court erred in overruling approximately thirty-six objections raised by the appellant in response to improper questions by the appellee. The

appellant designates on what pages of the record the objections were made; however, it does not state why the objections were improperly overruled and it does not cite any authority in support of its contentions. The appellant has failed to comply with Rule 418 of the Texas Rules of Civil Procedure. *See Hughes v. Houston Northwest Medical Center*, 680 S.W.2d 838, 843 (Tex. App.—Houston [1st Dist.] 1984, writ ref'd n.r.e.).

■ The appellant also complains that the appellee's closing argument directly appealed to the passion and prejudice of the jury by referring to the appellee as a "God-fearing Christian woman" and the appellant's employees as "two black people."

At trial, appellant never objected to these statements, and therefore, this issue was waived. *Standard Fire Insurance Co. v. Reese*, 584 S.W.2d 835, 839 (Tex.1979).

In its last point of error, the appellant contends that the cumulative effect of all the errors committed by the trial court warrants a reversal. Since we have found no reversible error in the other points of error, we find no merit to this contention.

The appellant's points of error are overruled and the judgment of the trial court is affirmed.

HOYT, J., dissents.

HOYT, Justice, dissenting.

I respectfully dissent from that portion of the majority's opinion which states that the evidence was sufficient to support the jury's award of damages. The harm done by false imprisonment is in the detention and arrest of the accused. Persons who cause others to be arrested are not responsible for the condition of the jail and the types of prisoners detained there. The humiliation suffered by someone arrested certainly is real; however, the fact that other prisoners smelled, that the floor was filthy, or that an officer spoke unkindly cannot be considered elements of damages. Awarding a person $15,000 per hour for false imprisonment is excessive and could only occur as a result of passion, prejudice

or improper motive on the part of the jury. *See Moore's Inc. v. Garcia*, 604 S.W.2d 261 (Tex.Civ.App.—Corpus Christi 1980, writ ref'd n.r.e.).

The true test of whether passion or prejudice affected the damages awarded is the degree of harm resulting from the jury argument or from the questions asked. In each instance the question for resolution is whether the allegedly improper jury argument or questioning was reasonably calculated to cause prejudice to the opposing party so that a withdrawal by counsel or an instruction by the court, or both, could not eliminate the probability that it resulted in an improper verdict. *Luna v. North Star Dodge Sales, Inc.*, 667 S.W.2d 115, 120 (Tex.1984); *Texas Employers' Insurance Association v. Haywood*, 153 Tex. 242, 245, 266 S.W.2d 856, 858 (1954). Texas courts have found plain error in jury argument that refers to witnesses or parties in ethnic or racial terms. *Penate v. Berry*, 348 S.W.2d 167 (Tex.Civ.App.—El Paso 1961, writ ref'd n.r.e.).

In the case at bar, to refer to the security personnel as those "black" security guards or "two black people" and by contrast refer to the appellee as a "God fearing Christian woman" is certainly designed to inflame and provoke the jury. *See Texas Employers' Insurance Association v. Jones*, 361 S.W.2d 725, 727 (Tex.Civ.App.—Waco 1962, writ ref'd n.r.e). Unfortunately these ethnic references are not isolated incidents but pervade the entire trial proceeding. If the security personnel needed to be characterized at all, it would have been by sex and not by race; one guard was a female and the other a male. As the supreme court has stated, "cases ought to be tried in a court of justice upon the facts proved; and whether a party is a Jew or gentile, white or black, is a matter of indifference." *Moss v. Sanger Bros.*, 75 Tex. 321, 323, 12 S.W. 619, 620 (1889).

In light of these observations the trial court abused its discretion in failing to remit part of the $150,000 actual damages and part of the $225,000 exemplary dam-

ages. I would, therefore, reverse the judgment and remand the cause for a new trial.