SKILLERN & SONS, INC., et al., Appellants,

v.

Marie STEWART, Appellee.

No. 16528.

Court of Civil Appeals of Texas.

Fort Worth.

May 15, 1964.

Rehearing Denied June 12, 1964.

Daugherty, Bruner, Kelsoe & Lastelick, and Jerry Lastelick, Dallas, for appellant Hopper & Hawkins, Inc.

Harris & Ball, and Chester G. Ball, Arlington, for appellee.

RENFRO, Justice.

Suit was brought by Marie Stewart, a widow, for damages for false imprisonment and assault against Skillern & Sons, Inc., and Hopper & Hawkins, Inc.

It was alleged that Skillerns was a drug store and that Hopper & Hawkins were engaged in security and investigative work; that Bill Strickland was acting as agent in the course of his employment with Skillerns, and Bill Koch and G. I. Miller were acting as agent in the scope and course of their employment with Hopper & Hawkins, and the latter were acting within the course and scope of agency with Skillerns.

The jury found: (1) Plaintiff was falsely imprisoned on Jan. 16, 1962, by Billy Strickland, District Manager of Skillerns; (2) plaintiff was falsely imprisoned by Bill Koch, employee of Hopper & Hawkins; (3) Bill Koch committed an assault on plaintiff; (4) plaintiff sustained damages by reason of the acts found in issues 1, 2 and 3; (5) plaintiff was damaged $10,000 by reason of above; (6 and 7) damages found by reason of lost salary, etc.; (8, 9 and 10) Strickland was not actuated by malice; (11, 12 and 13) Koch was actuated by malice, and plaintiff entitled to $10,000 exemplary damages against Hopper & Hawkins.

Judgment was entered for plaintiff against the defendants jointly and severally for the sum of $10,000 actual damages, and against Hopper & Hawkins severally for the sum of $10,000 exemplary damages.

Appellant Hopper & Hawkins in points 2, 3, 4 and 5 contend there is no evidence and insufficient evidence to support the jury's answer to issues 2 and 3. Skil-

Strasburger, Price, Kelton, Miller & Martin, and Hobert Price, Dallas, for appellant Skillern & Sons, Inc.

lerns in points 2, 3, 4 and 5 makes the same contention and includes issue No. 1.

As to the "no evidence" contention, we consider the evidence in the light most favorable to the jury's answers.

Plaintiff worked for Skillerns from October 16, 1953, until January 16, 1962. In January of 1962 she was employed in the cosmetic department. She was bonded at all times. The manager of the store was George McDonald and Bill Strickland was supervisor. McDonald was district manager of a chain of stores. Plaintiff never took anything, money or merchandise, from Skillerns, and was never accused of doing so until January 16, 1962. On January 4, McDonald told plaintiff she had to go to a meeting with him. They went to offices of Hopper & Hawkins where she was questioned. On January 16, McDonald said to her, " * * * We are going back to Dallas." She and McDonald went back to Hopper & Hawkins. She was taken to a small room. Strickland took her by the arm and led her to another room. Two strange men started throwing "accusations and everything" at her. They proved to be Koch and Miller. They introduced themselves as special investigators. Both asked her questions but Koch did "most of the talking, yes, and most of the beating on the desk and telling me that I had stolen." She told them she had not stolen anything. They insisted she write a confession to stealing merchandise and money. They accused her of stealing numerous items, and said, " 'We have the goods on you. We know you stole a coffee pot. We know you've been stealing money. All we want you to do is tell us what else you have stolen.' " She again denied all accusations. She explained a system whereby Skillerns gave employees a line of merchandise as a reward for going to school. They were allowed to trade such merchandise in for other merchandise. Koch said, "That is stealing." Koch told her she could not leave

until she wrote a statement that she had stolen money and merchandise. She refused. Koch picked up a pencil and tried to force her to sign a statement. He (Koch) asked her: "He asked me would I like to have my picture in the paper, or have a room down by Candy Barr.[1] And every once in a while he would pick up the phone, like he was going to call the District Attorney and take me right in if I didn't sign that paper. And over and over. If it wasn't him, it was this black-headed fellow he had in there with him."

She did not sign. She did leave the room. She went to a phone to call her son, then went back in the lobby to wait for McDonald. As she and McDonald were leaving, Strickland ran out and ordered them back. McDonald took her arm, turned her around, and went back to Hopper & Hawkins. Strickland took her to a room where Koch and Miller were waiting. Koch told her to sign a confession or she was going to the penitentiary, she had no other choice. There was a round table in the room. Plaintiff was placed in the center of it. She tried to get up but could not, "he was always there and wouldn't let me." She was told she would either sign or she would never get out of there, they were going to send her to the penitentiary. She finally signed a statement which she had not written. Koch dictated said statement to Miller. "Q. What transpired at that time about signing this instrument? A. I begged them to let me see a lawyer and talk to a lawyer before I signed the paper; that none of this was true; that I hadn't done any of these things, stolen any money or any merchandise, and I should see a lawyer before I signed a paper. And they kept telling me, 'It's only a letter to Mr. Skillern.' " Not one of the statements was true. Finally after denying the statement repeatedly, she was allowed to leave. Because of the treatment she had received she was so scared and worn down she finally signed the statement.

1. Candy Barr, a fairly well publicized individual, was at that time an inmate of the State penitentiary.

Before she signed the statement Koch would put his hands on her shoulders when she tried to rise from the chair.

Strickland fired her at that time.

She collapsed when she reached home, and has "been a complete nervous wreck from that day until this." She could not eat—could not sleep—had nightmares. She felt in a condition of shock. Extreme nervousness still comes over her. She has continuously been taking medicine since the incident. She gets real sick at the stomach and has "wretched" pain in the stomach.

The store manager, McDonald, was fired some time after January because of a question over his integrity or honesty.

Plaintiff went to a doctor on January 20. The doctor testified she was suffering from "globus hystericus, a choking sensation, a form of hysteria from extreme tension, that causes the neck muscles to clamp against the trachea and they have a sensation as if somebody is choking them. It is self-induced by tension of the neck muscles. We see it quite frequently in highly emotional states." He diagnosed her as a severe anxiety reaction which he felt was on the verge of a complete nervous breakdown. He felt that her condition was due to the trouble about the accusations. He prescribed medication and saw her on a weekly basis for four months, and has seen her monthly since that time. He testified it would be a year or two from the time of trial before she recovered. He did not think she was able to go to work but he encouraged her to try.

Strickland watched the interrogation of January 4 through a one-way mirror, but on the 16th he did not watch through a mirror, but did hear over a speaker system what was being said.

The secretary and controller of Skillerns tells Hopper & Hawkins what stores to check. He never received an unfavorable report on plaintiff prior to January 16. He signed plaintiff's confession as a witness, though he did not see her sign it.

Before the store went back to "normal", the manager, the assistant manager, the cigar clerk and several others had been fired.

Chamblis, of Hopper & Hawkins, gave plaintiff a polygraph test. He discussed the result of the test with Koch and Strickland.

Koch testified Hopper is President of Hopper & Hawkins. On first interrogation that afternoon, Koch took the lead in questioning plaintiff. She readily admitted she was guilty of taking some merchandise and money. She was not nervous or upset. He talked in a normal tone of voice, and so did plaintiff. Within 15 or 20 minutes plaintiff started a letter to Mr. Skillern. She stopped writing and said, "If I continue, or if I finish this letter I'll lose my job." Whereupon she walked out of the room. He did not try to stop her. He made "no threats, no promises or nothing."

About five o'clock plaintiff was called back to the office. Present were Koch, Miller and probably Mr. Hopper. Plaintiff sat at the desk near an open door. Plaintiff was asked if she desired to explain further to Mr. Skillern. She answered that she just did not feel like writing anything. But, in response to Koch's question, answered it would be agreeable to her for Koch to dictate her admissions to Miller. The statement is in Miller's handwriting. "The long statement was completed, signed, witnessed and everything in approximately 15 minutes, maybe 20 minutes." On this occasion "no threats", no promises, nothing were made by Koch or anyone else. His only physical contact with plaintiff was a handshake after she signed the statement. During the interval between the first and second interrogation Koch talked to Hopper and Hawkins about plaintiff's case.

The above evidence supports the findings of the jury on the issues in question, and from a study of the entire record we are not willing to hold that such findings are against the great preponderance of the evidence.

In point No. 1 Hopper & Hawkins argue the court erred in not instructing the jury that the nature of the false imprisonment should be calculated to detain the person and from which she cannot by ordinary means relieve herself.

The court instructed the jury: "By the term 'false imprisonment' as used in the issues hereinafter submitted is meant the wilful detention by another without legal justification, against his consent; whether such detention be effected by violence, or by threats or by any other means, which restrains a person from moving from one place to another."

The court's definition of false imprisonment was taken from Fort Worth Well Machinery & Supply Co. v. Waggoman, Tex. Civ.App., 52 S.W.2d 306. In that case the court of civil appeals reversed the judgment of the trial court because of jury misconduct. The Supreme Court, Waggoman v. Fort Worth Well Machinery & Supply Co., 124 Tex. 325, 76 S.W.2d 1005, reversed the court of civil appeals and affirmed the trial court's judgment, thus approving the instruction given by the trial court and approved by the court of civil appeals. Substantially the same definition was given and approved in Newton v. Rhoads Brothers, Tex.Com.App., 24 S.W.2d 378; A. Harris & Co. v. Caldwell, Tex.Civ.App., 276 S.W. 298.

In view of all the evidence, we think the instruction was sufficient.

Appellants contend the exemplary damage issues should have been submitted jointly as to both defendants, not separately as given. The evidence was such that the jury could find that one defendant acted with malice while the other did not. It was not error to submit the issues so that if one was not actuated by malice the other would still be liable for exemplary damages, depending upon the jury findings.

Both appellants contend the actual damages found by the jury were excessive.

We have set out in some detail the testimony of plaintiff and her doctor as to the effects on plaintiff.

Since the amount of damages to be awarded a plaintiff in an action involving false imprisonment is peculiarly within the discretion of the jury, unless the damages allowed are so excessive as to create a strong suspicion of improper motives influencing the jury, it will not be set aside on that account. 25 Tex.Jur.2d p. 287.

The verdict, under the record, was not so excessive as to create a strong suspicion of improper motives.

Hopper & Hawkins say there was no evidence and insufficient evidence to support the answer to issue No. 11 and the finding was against the great weight and preponderance of the evidence.

According to the general rule, if a defendant in wrongfully detaining another acts recklessly, or wilfully and maliciously, and with a design to oppress and injure the plaintiff, the plaintiff is entitled to recover exemplary damages. 25 Tex.Jur.2d p. 288. See also cases cited under text.

If the testimony of plaintiff was true concerning the treatment accorded her on the occasion of the second interrogation on January 16, then the jury verdict is supported, for the conduct of Koch, particularly, would subject Hopper & Hawkins to exemplary damages under the above rule. The jury did believe plaintiff. There was evidence of probative force to support the findings to issues Nos. 11, 12 and 13, and we cannot say, in view of the record as a whole, that the findings are against the overwhelming weight and preponderance of the evidence.

In other points Hopper & Hawkins contend the findings on exemplary damages were without evidence, were against the great weight and preponderance of the evidence and were excessive. The jury found exemplary damages against Hopper & Hawkins in the amount of $10,-000. We again refer to the evidence set out

in the first part of the opinion. There was evidence to support the jury's finding of malice and that plaintiff was entitled to exemplary damages. The findings were not against the great preponderance of the evidence. Neither was the amount of $10,000 excessive. The amount of exemplary damages, depending on the particular case, should ordinarily be reasonably apportioned to the actual damages sustained. In the instant case the amount of exemplary damages was the same as the actual damages found by the jury.

■ The question of the measure of exemplary damages comes under the general rule that, where the law furnishes no legal measure of damages and they are unliquidated, the amount to be awarded rests largely in the discretion of the jury; and unless the award is so large as to indicate that it is a result of passion, prejudice or corruption, or that the evidence has been disregarded, the verdict of the jury is conclusive and will not be set aside as excessive, either by the trial court or on appeal. Tynberg v. Cohen, 76 Tex. 409, 13 S.W. 315; Home Furniture Co. v. Hawkins, Tex.Civ.App., 84 S.W.2d 830; 17 Tex.Jur.2d 255, § 186.

Under the circumstances of this case we do not believe that the jury followed the dictates of passion rather than reason in making their finding.

■ By points 13 and 14 Hopper & Hawkins say the court erred in submitting issue 11 without requiring the jury to find that Hopper & Hawkins directed, authorized or ratified the action of Koch and in failing to require the jury to find that Koch was acting within the course and scope of his authority when and if he was actuated by malice toward plaintiff.

The court's judgment recites: "And it further, prior to the submission of issues to the jury, having been stipulated by the parties in the presence of the court and it having been announced to the Court by attorneys for both Defendants that there was no fact question of agency involved and that

Bill Strickland in all things and at all times in question was acting as a duly authorized agent of Skillern & Sons, Inc. and that Bill Koch was at all times and in all things acting as a duly authorized agent of Hopper & Hawkins, Inc., and that Hopper & Hawkins, Inc. was agent of Skillern & Sons, Inc."

Because of the stipulation issues on course and scope and ratification were not necessary.

■ In points 19 and 20 both appellants contend it was reversible error for plaintiff's counsel to argue to the jury that at no time did either defendant call the police, the District Attorney, or somebody and "turn them in", that they did not call the police because they are "not going to get in trouble with the police", and in arguing that Skillerns never turned the matter over to the bonding company.

Evidence that plaintiff was "bonded" and that no claim was made to the bonding company was in the record. Counsel's comments thereon were therefore based on the record and were fair deductions to be drawn from the evidence. Such argument was not error.

The argument concerning the police was perhaps improper, but, considering the argument in the light of the entire record, it was not such error as was calculated to cause and probably did cause the rendition of an improper verdict. Rule 434, Texas Rules Civ.Procedure.

Skillerns presents a number of points of error based on objections to the charge and the refusal of the court to give certain requested special issues. The trial court fairly and fully submitted the controlling issues and gave the correct instructions where instructions were required.

Skillerns says the charge erroneously allowed the jury to award damages to the reputation of plaintiff; that there was no evidence of damage to her reputation. We fail to find mention of reputation in the charge.

Skillerns contends it was error for the court to refuse the defendants the right to elicit from Chamblis the result of a polygraph test taken by plaintiff on January 4.

In Central Mutual Ins. Co. v. D. & B., Inc., Tex.Civ.App., 340 S.W.2d 525, the Waco Court, speaking through Justice Wilson, said: "We find no jurisdiction at this time which admits evidence of results of lie detector tests in civil cases over objection; they are uniformly excluded. * * * we feel obliged to follow the uniform rule."

We find no reason in this case to depart from the uniform rule.

Skillerns has presented 25 points. Hopper & Hawkins have presented 20 points. A number of the points raised by the parties are directed to the same matter. We have considered all points briefed by both appellants and they are each and all overruled.

Judgment affirmed.