**SAFEWAY STORES, INC., et al., Appellants,**

**v.**

**Kenneth AMBURN, Appellee.**

**No. 16609.**

Court of Civil Appeals of Texas.

Fort Worth.

March 12, 1965.

———◆———

Clark, West, Keller & Clark, W. B. West, III, and Allen Butler, Dallas, for appellant Safeway Stores, Inc.

Daugherty, Bruner, Kelsoe & Lastelick, and Jerry Lastelick, Dallas, for appellant Hopper & Hawkins.

Anderson & Connell, and Jack Connell, Wichita Falls, for appellee.

LANGDON, Justice.

This is a suit for damages for false imprisonment and for other relief brought by Kenneth Amburn against Safeway Stores, Inc., R. C. Newman and Hopper & Hawkins, Inc. Amburn was formerly employed as a clerk in the Safeway Store at Jacksboro. R. C. Newman is the District Manager for Safeway Stores within whose district Jacksboro is located. Hopper & Hawkins, Inc., is an independent organization which performs certain contract services for Safeway Stores and others, consisting of observing and reporting on employee efficiency, courtesy, appearance, conduct, honesty and observance of company rules and procedures.

Amburn was questioned by an employee of Hopper & Hawkins concerning irregularities in the handling of funds, and signed a statement admitting that he had taken money. He also executed a promissory note and transferred the title to his automobile to Safeway Stores in repayment of the money he had admitted taking. Amburn then was discharged and brought this suit for damages, alleging that he had been falsely imprisoned, that he had not taken any money, and that he had signed the statement admitting such taking, the promissory note and the transfer of car title while under duress.

The trial court entered judgment on the verdict in favor of Amburn and against Safeway and Hopper & Hawkins, Inc., for actual damages of $20,000.00 and exemplary damages of $27,000.00. Judgment was entered after verdict, however, in favor of the third defendant, R. C. Newman, and against Amburn.

After Amburn had rested and again after all parties had closed, Safeway filed a motion for instructed verdict raising the points that there was no evidence or at most only a scintilla of evidence that Amburn had been falsely imprisoned by anyone. Such points have been properly preserved and are assigned as error. Hopper & Hawkins, Inc., assign as error the submission of an issue on false imprisonment as to its agents, servants and employees over its objection that there was no evidence to support such issue. These points are sustained. We conclude that the record discloses no direct evidence to support the submission of any issues on false imprisonment or the jury's findings thereon as to any of the defendants. Our decision makes it unnecessary to decide the many other points of error raised in appellants' briefs.

We now review the testimony most favorable to Amburn relating to his cause of action for false imprisonment which, of course, was his own.

About 9:30 a. m. on the day in question, Amburn was working at the Safeway Store and recognized R. C. Newman, District Manager for Safeway. At about 10:30 a. m., while Amburn was loading produce crates on a grocery truck, Newman approached Amburn from behind and touched his arm to gain attention. Newman requested Amburn to accompany him for the purpose of talking to somebody. Amburn

and Newman then proceeded to a secluded area at the back of the store in the northeast corner. It was an aisle of the store. The area was "U" shaped, about 14 feet in length and 12 feet in width. Pop bottles and other items were stacked high against the north and south sides so as to reduce the passable area to approximately 6 feet in width. The east end was closed off for storage. The entry to the area was at the west end which was open. It was the most private place available in the store for a conference.

When Amburn and Newman reached the designated area, Bill Koch of Hopper & Hawkins was waiting for them. After introductions, Amburn sat on a crate against the south wall and Koch sat directly in front of him against the north wall. They faced each other. Shortly after the conference started, Newman left the area to assist other employees to complete the loading of the truck. During Newman's absence Amburn had a passable area to his left some 4 feet to 6 feet wide through which he could have departed at any time. After Newman returned to the area and sat to Amburn's left, Amburn testified that he still had room to walk past him and out of the area. Newman made no threat or effort to detain Amburn nor was he unfriendly or discourteous. All the talking was done by Koch and Amburn. Koch used no physical force to detain Amburn nor did he threaten to restrain him. Except to shake hands, neither Newman nor Koch touched Amburn during the interview. There was no obstruction to prevent Amburn's passage in or out of the aisle where the meeting took place. Koch's interrogation lasted about 30 or 40 minutes. Amburn never at any time made a request to leave. He did not at any time attempt to depart the area or indicate a desire to do so. He was never told he had to remain. No threats were made to detain him.

According to Amburn's testimony, Koch told him that he had checked the tapes from the cash registers and they were all the evidence needed to send Amburn to the penitentiary. Koch held the tapes in Amburn's face and upon being confronted with the tapes and his alleged defalcations, Amburn became frightened. He testified: " * * * my stomach was drawed up in knots. I believe I was actually sick. I don't think I could moved even if I had tried." Amburn also testified that he was scared throughout the interview and was so weak in his knees that he could hardly walk. He also testified as to being sick to his stomach and to "shaking like a leaf." Koch told Amburn that he was not a very good liar and that the salary in Huntsville for checkers was not very good. Amburn was handed a clip board and pen for his use in writing a letter to Safeway admitting he had been guilty of stealing $500.00 from the cash register. The letter was dictated by Koch and contained a statement to the effect that the letter was written on Amburn's own free will without threats or promises from anyone.

After the letter was signed, Amburn told Newman and Koch that he would try to borrow the money from the bank to repay Safeway. The Bank President was not in. Amburn went home and cleaned out his car. He left his home and later returned for the car title. He then returned to the store about noon and was told by Newman to return after lunch. Amburn went home for lunch but could not eat. He thereafter met Newman and Koch at 2:00 p. m. at the store. Upon their request he met them at the Ford agency where he transferred title to his car to Safeway and executed a note to Safeway in the amount of $280.00. Newman and Amburn returned to the store in the latter's car. Newman then requested the keys to the car and gave Amburn a receipt for $220.00. Amburn was thereupon paid his wages and discharged.

Amburn alleged in part: "In this connection, Plaintiff alleges the facts to be that by such conduct and threats of R. C. Newman and Bill Koch, that he was overawed and intimidated, frightened to the extent of being incapable of exercising his will in removing himself, and thereby pre-

vented from leaving said place in said store where he was thus held and willfully and maliciously detained for several hours against his will."

◼ From this summary of Amburn's testimony, it can be seen that the interview lasted thirty to forty minutes rather than several hours and that there was no evidence as to false imprisonment. Moreover, this case raises the question of the limitations imposed upon an employer in discussing with an employee matters relevant to his employment. We think an employer is entitled to discuss with his employees all matters bearing upon the duties and purposes attendant to the employment and particularly where he has information touching upon the fidelity of the employee. We also think the employee is entitled to be forthwith confronted with such information and that the logical place for such a conference would be in the establishment where the employee is hired to work. It is possible, of course, for such an interview to be held at an improper place and conducted in an improper manner. From a careful review of the record, however, we do not believe this to be the case as far as Amburn is concerned. The conference with Amburn was conducted in the regular place of business by one whose duty it was to investigate such matters. The area was sufficient to accommodate the presence of the persons involved. No threats or physical efforts were made to restrain Amburn. He was at all times free to leave. There was no impediment to restrain Amburn from removing from one place to another.

◼ We do not approve of the conduct of Koch. Such conduct, however, bears only upon the value of Amburn's confession as evidence and the validity of his execution of the note and transfer of the title to the car. It has nothing to do with whether he was falsely imprisoned. The confession and execution of the other instruments may have been made because

Amburn feared that he would be sent to the penitentiary or reported to the bonding company, or both. This fact may have rendered the confession and the execution of the note and transfer involuntary. It did not render Amburn's presence in the area of interrogation false imprisonment.

◼ While employers should be admonished that their dealing with employees should always be reasonable and humane, we cannot adopt a rule which would constantly place an employer in jeopardy of a charge of false imprisonment. The interview with Amburn had a direct bearing upon his duties as an employee. He was compensated during the time that he was in the area. Under the circumstances, it cannot be said that his requested presence for purposes of interrogation constituted false imprisonment unless he was unlawfully detained. We accept at face value Amburn's testimony that he was scared. It is not unlikely that any person being confronted with questions concerning his personal integrity would relish such an interview. This, however, is not the same as false imprisonment.

In Safeway Stores, Inc., v. Amburn, 380 S.W.2d 727 (Fort Worth Civ.App., 1964, Dism.), this court in an appeal from an order overruling pleas of privilege held that Amburn's proof failed to establish false imprisonment as against all defendants. He has not improved his position in this respect.

Article 1169 of the Vernon's Ann.Penal Code-defines false imprisonment as " * * the wilful detention of another against his consent and where it is not expressly authorized by law, whether such detention be effected by an assault, by actual violence to the person, by threats or by any other means which restrains the party so detained from removing from one place to another as he may see proper."

The impediment must be such as in its nature is calculated to detain the person and from which he cannot, by ordinary means, relieve himself. Article 1171, V.A. P.C. The threat which is alleged to have resulted in false imprisonment must be calculated to detain the person. It must result in more than intimidation if one can, by ordinary means, relieve himself from any restraint or detention. J. C. Penney Company v. Romero, 318 S.W.2d 129 (San Antonio Civ.App., 1958, writ ref., n. r. e.); Weiler v. Herzfeld-Phillipson Co., 189 Wis. 554, 208 N.W. 599 (1926); White v. Levy Brothers, Inc., 306 S.W.2d 829 (Ct. of App., Ky., 1957); Restatement of the Law, Torts, False Imprisonment, §§ 35 and 36.

Threats of arrest and imprisonment improperly made to induce a confession may invalidate the confession but have no bearing on the issue of false imprisonment where the person is not detained by force or threats of force. 35 C.J.S. False Imprisonment § 71, pp. 784–785. See also 35 C.J.S. False Imprisonment § 11, pp. 635–637; 22 Am.Jur. 359, § 9.

In reaching this result, we find nothing inconsistent with our opinion in Skillern & Sons, Inc., v. Stewart, 379 S.W.2d 687 (Fort Worth Civ.App., 1964, writ ref., n. r. e.). Since we conclude that there is no direct evidence to support the submission of any issues on false imprisonment or to sustain a jury verdict thereon, we are not called upon to pass upon the form and manner in which such issues were submitted to the jury.

We have concluded that judgment against Safeway and Hopper & Hawkins, Inc., for actual and exemplary damages based upon false imprisonment should be reversed and rendered and that the portion of the judgment cancelling the transfer of title to the car and the note should be affirmed.

Affirmed in part and reversed and rendered in part.