**MONTGOMERY WARD & COMPANY,**
**Appellant,**

v.

**Olivia HERNANDEZ, Appellee.**

**No. 1940cv.**

Court of Appeals of Texas,
Corpus Christi.

Sept. 1, 1983.
Supplemental Opinion on the Filing
of Remittitur Oct. 13, 1983.

H.H. Rankin, Jr., Rankin & Kern, Inc., McAllen, for appellant.

R.A. Vidaurri, A.A. Munoz, II, Flores, Sanchez, Vidaurri, Munoz & Guerra, McAllen, for appellee.

Before BISSETT, UTTER and KENNEDY, JJ.

## OPINION

UTTER, Justice.

Appellee Olivia Hernandez alleged that she had been falsely imprisoned by appellant Montgomery Ward & Company, and brought this suit seeking actual and exemplary damages. The jury awarded her $60,-000.00 "for damages directly resulting from the false imprisonment . . ." and $25,000.00 as exemplary damages. On appeal we reversed that judgment and remanded the cause for a new trial because we determined the special issues submitted to be erroneous. *Montgomery Ward & Co. v. Hernandez*, 644 S.W.2d 758 (Tex.Civ.App.—Corpus Christi, 1982). The Supreme Court of Texas reversed the judgment of this court; however, following appellant's motion for rehearing, the Supreme Court withdrew its judgment in part and remanded the case back to this Court for determination of appellant's points of error concerning factual insufficiency of the evidence, which we did not originally consider. 652 S.W.2d 923. We now find that the evidence is sufficient to support the jury verdict.

Appellant challenges the sufficiency of the evidence to support the jury findings that (1) the detention of appellee was without authority of law; (2) appellee suffered $60,000.00 actual damages; and, (3) appellee suffered $25,000.00 exemplary damages. Appellant also contends that the amounts of the actual and exemplary damages, as respectively found by the jury, were excessive.

■ We have been instructed only to consider appellant's factual insufficiency points of error. In reviewing these points of error, we will consider all of the evidence in the record that is relevant to the fact being challenged. In addition, however, appellant has distinguished between "insufficient evidence" points and "great weight" points in his points of error. An "insufficient evidence" point requires only a consideration of the positive evidence tending to support a fact, whereas a "great weight" point requires a consideration of all of the evidence, both that tending to prove the fact and that tending to disprove the fact. *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660 (1951). Calvert, *"No Evidence" and "Insufficient Evidence" Points of Error, 38 Texas L.Rev. 361 (1960).*

The record indicates that appellee, then fifty-five years old and with a seventh grade education, was shopping in appellant's store in Pharr, Texas, on August 26, 1978, at which time she made a credit card purchase. Through some mixup on the part of appellant, appellee was given the credit card of Gloria Longoria, and Gloria Longoria was given appellee's card. Gloria Longoria noticed the mistake when she subsequently went to the shoe department and reported the switch to one of appellant's clerks, Cynthia Hernandez. Ms. Hernandez took the card from Gloria Longoria and paged appellee on the intercom system but received no response. Appellee continued home unaware that she had the credit card of Gloria Longoria and not her own. The code number "005" was thereafter entered into appellant's computerized cash register; this meant that anytime that the Longoria credit card was used, the register would read "005", reflecting that the credit card being used was either lost or stolen. Mrs. Longoria had not reported the card either lost or stolen.

Appellee returned to the store some three weeks later, on September 16, 1978, and attempted to purchase infant wear from the same clerk, Ms. Cynthia Hernandez, using the credit card in her possession to make the purchase. The use of the card produced a "005" register code and Ms. Hernandez called the security guard, Mr. Adolfo Reyes, who escorted appellee to the security office. Mr. Reyes refused to show appellee the card which she had used although appellee insisted adamantly that the card was in fact hers. He notified the police, but in the meantime refused to let appellee leave the office or call her husband. By the time the police arrived, appellee was visibly upset and crying, and

they agreed to wait for appellee's husband to arrive. After appellee's husband arrived, the police escorted appellee out of the store, and appellee and her husband followed the squad car to the Pharr Police Station, where appellee was charged with the offense of credit card abuse, a third degree felony carrying a potential range of punishment from two to ten years in the penitentiary and a fine up to $5,000.00. The entire episode took about an hour and a half. The charges filed on appellee were subsequently dropped when the error was discovered.

Mr. Reyes himself testified that he took appellee to the Security Office, a room about 10 feet by 8 feet; that he made phone calls to his superiors for instructions; that he would not have allowed her to leave; and that he notified the police and suggested that they take her to the police department. It was established that appellee was escorted from the store by the police officers between 6:00 and 7:00 on a Saturday evening when the store was very crowded, and she testified that the occurrence made her feel upset, ashamed, and embarrassed. She further testified that she could never forget the incident, and that the memory of it depressed her to the point that she missed time at work in the grocery store where she and her husband worked. Appellee's sister offered testimony tending to show that Mr. Reyes' general demeanor was accusatory, and that he refused to be dissuaded by evidence tending to exculpate appellee when appellee's husband brought receipts from prior credit card purchases made by appellee on her authorized card. The cost of the goods she was accused of attempting to obtain by using the unauthorized credit card was $15.20; evidence showed that appellee had spent approximately $779.00 on a TV in August.

The evidence further shows that appellee received the wrong card on August 26, 1978; the incident causing this lawsuit occurred on September 16, 1978; a letter admitting error was sent out, dated October 20, 1978; and her card was returned around November 20, 1978. Appellee never received an apology.

Police Officer Anacleto Martinez testified that appellant was arrested and given her "Miranda Warning"; that his department now has a file on appellee containing a "rap sheet"; and that she is classified as a suspicious person for credit card abuse.

Appellee testified at trial that she was nervous and embarrassed, cried during the incident, and felt humiliated. She also testified that although she still felt nervous and embarrassed, she had not been to see a doctor about her condition, had incurred no medical expenses, and had lost no income. The jury found that appellee had suffered actual damages in the sum of $60,000.00. The jury also found that appellant had acted "in heedless and reckless disregard" of the rights of appellee and therefore assessed exemplary damages against appellant in the sum of $25,000.00.

As stated in our prior opinion, in order to establish the tort of false imprisonment, appellee must have shown that she was willfully detained without her consent or authority of law. *Moore's, Inc. v. Garcia*, 604 S.W.2d 261 (Tex.Civ.App.—Corpus Christi 1980, writ ref'd n.r.e.); *Sanchez v. Garza*, 581 S.W.2d 258 (Tex.Civ.App.—Corpus Christi 1979, no writ). The detention of appellee, whether lawful or unlawful, becomes a fact question to be resolved by the jury. *Citizens Hotel Co. v. Foley*, 131 S.W.2d 402 (Tex.Civ.App.—Fort Worth 1939, writ dism'd judgment cor.); *Wright v. Kroeger Corporation*, 422 F.2d 176 (5th Cir. 1970). Our review of the record reveals abundant evidence from which the jury could properly find that appellee was detained unreasonably without authority of law, and this contention is therefore overruled.

In reviewing the award of actual damages given by a jury in these type of cases, the Court stated in *Moore's Inc. v. Garcia*, supra:

"The amount of damages awarded to an injured plaintiff is largely left up to the jury for their determination. The jury may look to all injuries of the plaintiff, which are not limited to those physical in nature but also include the more intangi-

ble injuries of humiliation, shame, fright, and anguish. *J.C. Penney Company v. Duran,* [479 S.W.2d 374, (Tex.Civ.App.—San Antonio 1972, writ ref'd n.r.e.)].

In reviewing the assessment of exemplary damages, this Court stated in *Dover Corp. v. Perez,* 587 S.W.2d 761 (Tex.Civ.App.—Corpus Christi 1979, writ ref'd n.r.e.):

"To be overturned by an appellate court, exemplary damages must also be the result of passion, prejudice, corruption or abuse. *Gibson Discount Center, Inc. v. Cruz* [562 S.W.2d 511 (Tex.Civ.App.—El Paso 1978, writ ref'd n.r.e.)]. Exemplary damages should also be reasonably apportioned to the actual damages sustained. *Skillern & Sons, Inc. v. Stewart,* 379 S.W.2d 687 (Tex.Civ.App.—Fort Worth 1964, writ ref'd n.r.e.)."

In her first amended original petition, appellee sought judgment of at least $30,000.00 for being falsely imprisoned, at least $25,000.00 for slander, and at least $25,000.00 exemplary damages. The jury found that appellee had been damaged in the amount of $60,000.00 from the false imprisonment, and $25,000.00 in exemplary damages.

We find the amount of exemplary damages to be reasonable, but hold that the award of $60,000.00 for actual damages is excessive. We must therefore suggest a remittitur and the time within which it must be filed. *Impson v. Structural Metals, Inc.,* 487 S.W.2d 694 (Tex.1972); *Mitchell v. Jones,* 548 S.W.2d 813 (Tex.Civ.App.—Corpus Christi 1977, no writ).

In resolving the issue of whether the award of actual damages was excessive, we have carefully examined the facts and circumstances of this case in the light of precedent, realizing that the law has provided us with no fixed standards for determining mental suffering, embarrassment, and humiliation. However, we conclude that the amount of actual damages awarded to appellee is excessive in the amount of $30,000.00. See *Kroger Company v. Demakes,* 566 S.W.2d 653 (Tex.Civ.App.—Houston [1st Dist.] 1978, writ ref'd n.r.e.);

*Mitchell v. Jones,* 548 S.W.3d 813, supra; *K-Mart No. 4195 v. Judge,* 515 S.W.2d 148 (Tex.Civ.App.—Beaumont 1974, writ dism'd).

It is accordingly ordered that a remittitur of $30,000.00 be filed by appellee in this Court within ten days from the announcement of this decision, whereupon this Court will reform the judgment of the trial court by the amount of the remittitur; otherwise the judgment of the trial court will be reversed and the cause remanded for a new trial. Tex.Rules Civ.Proc. 440; *Carter v. Texarkana Bus Company,* 156 Tex. 285, 295 S.W.2d 653 (1956); *Mitchell v. Jones,* supra.

The judgment of the trial court as REFORMED is AFFIRMED on CONDITION OF REMITTITUR.

## SUPPLEMENTAL OPINION ON THE FILING OF REMITTITUR

This Court, in our opinion delivered September 1, 1983, suggested that appellee, Olivia Hernandez, remit the sum of $30,000.00 out of the amount awarded to her in actual damages. The appellee has filed a remittitur in the amount suggested by this Court.

Therefore, in accordance with our opinion of heretofore announced, the judgment of the trial court is reformed to the extent of the amount hereby remitted by the appellee so that the amount of judgment against the appellants is reduced to the sum of $30,000.00 for actual damages and $25,000.00 in exemplary damages.

The judgment of the trial court as herein REFORMED is AFFIRMED.