v00594.cp1








NUMBER 13-00-594-CV

COURT OF APPEALS

THIRTEENTH DISTRICT OF TEXAS

CORPUS CHRISTI


________________________________________________________________________


DULCINEA N. CUELLAR, Appellant,



v.


WALGREENS CO. AND JIM LINDSEY, Appellees.

________________________________________________________________________


On appeal from the County Court at Law No. 2 of Nueces County, Texas.

________________________________________________________________________



O P I N I O N


Before Justices Dorsey, Yañez and Rodriguez

Opinion by Justice Yañez


 
Appellant, Dulcinea Cuellar, appeals from a summary judgment granted in favor of appellees, Walgreen Company and its
loss prevention specialist, Jim Lindsey. In a single point of error, Cuellar contends generally that the trial court erred in
granting summary judgment on her claims for: (1) negligence; (2) defamation; (3) intentional infliction of emotional
distress; and (4) false imprisonment. We affirm. 

Background 

The summary judgment evidence, viewed in the light most favorable to Cuellar, shows that Cuellar began her employment
with Walgreen's on February 13, 1999. According to Cuellar, cashiers routinely rang up items priced as "two for" a
particular amount by entering the first item at the listed price and the second item at one cent. In late April, Cuellar
purchased some items at the store. In accordance with the recommended practice, the purchases were entered by another
Walgreen's cashier. The price entered for a purchase of photographs was one cent. On June 2, 1999, in response to a
request from the store manager, Lindsey arrived at the store to investigate the incident. Lindsey escorted Cuellar to the
"tape room," a room at the rear of the store used by employees to review training tapes, and interviewed her for
approximately an hour and fifteen minutes. Cuellar contends Lindsey threatened that she would be charged with theft and
taken away in handcuffs by the police unless she confessed to stealing store merchandise. According to Cuellar, she was
not specifically informed of the nature of the allegations against her, nor was she given an opportunity to explain. Lindsey
accused her of "grazing," a term used to describe a store employee's taking of a product from the store and consuming it
without paying for it. Cuellar admitted she had eaten two candy bars without paying for them. Although Cuellar denies that
she ever stole any items from the store, at the end of the two-hour interview, she was so distraught that she signed a
statement confessing to "passing" $350 in store merchandise, plus four dollars for the two candy bars. 

Cuellar filed suit against Walgreen's and Lindsey on June 23, 1999, alleging causes of action for negligence, defamation,
and intentional infliction of emotional distress. (1) On July 11, 2000, the trial court granted a "take nothing" summary
judgment in favor of appellees. This appeal followed.

Standard of Review

In a traditional summary judgment proceeding, the standard of review on appeal is whether the successful movant at the
trial level carried the burden of showing that there is no genuine issue of material fact and that judgment should be granted
as a matter of law. M. D. Anderson v. Willrich, 28 S.W.3d 22, 23 (Tex. 2000); Am. Tobacco Co., Inc. v. Grinnell, 951
S.W.2d 420, 425 (Tex. 1997); Nixon v. Mr. Prop. Mgmt. Co., Inc., 690 S.W.2d 546, 548 (Tex. 1985). In resolving the
issue of whether the movant has carried this burden, all evidence favorable to the non-movant must be taken as true and all
reasonable inferences, including any doubts, must be resolved in the non-movant's favor. Willrich, 28 S.W.3d at 23-24;
Nixon, 690 S.W.2d at 548-49; Noriega v. Mireles, 925 S.W.2d 261, 266 (Tex. App.-Corpus Christi 1996, writ denied). 
When the defendant is the movant and submits summary judgment evidence disproving at least one essential element of
each of the plaintiff's causes of action, then summary judgment should be granted. Grinnell, 951 S.W.2d at 425; Science
Spectrum, Inc. v. Martinez, 941 S.W.2d 910, 911 (Tex. 1997). If the movant has established his or her right to summary
judgment, the burden shifts to the non-movant to present evidence that would raise a genuine issue of material fact. Fojtik
v. Charter Med. Corp., 985 S.W.2d 625, 629 (Tex. App.-Corpus Christi 1999, pet. denied). If a summary judgment is
granted generally, without specifying the reason, it will be upheld if any ground in the motion for summary judgment can
be sustained. Bradley v. State ex rel. White, 990 S.W.2d 245, 247 (Tex. 1999) (citing Star-Telegram, Inc. v. Doe, 915
S.W.2d 471, 473 (Tex. 1995)); Weakly v. East, 900 S.W.2d 755, 758 (Tex. App.-Corpus Christi 1995, writ denied). 

Issues which the non-movant contends preclude the granting of a summary judgment must be expressly presented to the
trial court by written answer or other written response to the motion and not by mere reference to summary judgment
evidence. McConnell v. Southside School Dist., 858 S.W.2d 337, 341 (Tex. 1993). Issues not expressly presented to the
trial court in writing shall not be considered on appeal as grounds for reversal. Tex. R. Civ. P. 166a(c). Further, all theories
in support of or in opposition to a motion for summary judgment must be presented in writing to the trial court.Casso v.
Brand, 776 S.W.2d 551, 553 (Tex. 1989). Additionally, pleadings do not constitute summary judgment proof. City of
Houston v. Clear Creek Basin Authority, 589 S.W.2d 671, 678 (Tex. 1979).

Cuellar contends the trial court erred in granting summary judgment because there are material fact issues regarding: (1)
whether holding her against her will for two hours constitutes false imprisonment; (2) whether appellees' conduct in
accusing her of theft and firing her after a forced confession was sufficiently "outrageous" as to constitute intentional
infliction of emotional distress; (3) whether the accusations of theft constitute defamationper se; and (4) whether appellees
acted negligently in conducting the investigation. 


False Imprisonment

The elements of false imprisonment are: (1) a willful detention; (2) performed without consent; and (3) without the
authority of law. Randall's Food Markets, Inc. v. Johnson, 891 S.W.2d 640, 644 (Tex. 1995); Wal-Mart Stores, Inc. v.
Cockrell, 61 S.W.3d 774, 777 (Tex. App.-Corpus Christi 2001, no pet.). A willful detention may be accomplished by
violence, by threats, or by any other means restraining a person from moving from one place to another. Randall's, 891
S.W.2d at 644-45. In a false-imprisonment case, if the alleged detention was performed with the authority of law, then no
false imprisonment occurred. Cockrell, 61 S.W.3d at 777 (citing Wal-Mart Stores, Inc. v. Resendez, 962 S.W.2d 539, 540
(Tex. 1998)). The plaintiff must prove the absence of authority in order to establish the third element of a
false-imprisonment cause of action. Id. An employer has a common-law privilege to investigate reasonably credible
allegations of the dishonesty of its employees. Randall's, 891 S.W.2d at 644. 

Where, as here, it is alleged that a detention is effected by a threat, the plaintiff must demonstrate that the threat was such as
would inspire in the threatened person a just fear of injury to his person, reputation, or property. Fojtik, 985 S.W.2d at 629
(citing Randall's, 891 S.W.2d at 645). Threats to call the police are not ordinarily sufficient in themselves to effect an
unlawful imprisonment. Id. In determining whether such threats are sufficient to overcome the plaintiff's free will, factors
such as the relative size, age, experience, sex, and physical demeanor of the participants may be considered. Id. (citing
Black v. KrogerCo., 527 S.W.2d 794, 800 (Tex. App.-Houston [1st Dist.] 1975, writ dism'd)).

Even when we consider the evidence in the light most favorable to Cuellar, we find she has not raised a fact issue as to
whether she was willfully detained without her consent and without authority of law. Appellees contend Cuellar's false
imprisonment claim fails because: (1) she consented to the interview by never attempting to leave the room; and (2) they
were privileged to investigate the suspected theft. As summary judgment proof, Cuellar "incorporate[d] by reference all of
the depositions, documents, and exhibits attached to [appellees'] Motion for Summary Judgment." In particular, Cuellar
pointed to her deposition testimony, in which she testified that she signed the statement saying she had "passed" $350 in
merchandise because she was "scared to death." Cuellar testified that what "scared [her] the most" was Lindsey's statement
that she had a choice between riding home in her own car or in a "cop car." She noted that as a twenty-two-year-old, she
had "never had to do this before." 

Cuellar points to Kroger, 527 S.W.2d at 800-01, and Skillern & Sons v. Stewart, 379 S.W.2d 687, 689-90 (Tex. App.-Fort
Worth 1975, writ ref'd n.r.e.), as "factually similar" to the instant case. To support her argument that she is like the plaintiff
in Kroger, Cuellar notes that she is a twenty-two-year old woman, living at home with her parents, and that she is five feet
three inches in height, whereas Lindsey is six feet five inches. Although we agree that factors such as the relative size, age,
experience, sex, and physical demeanor of the participants may be considered, see Kroger, 527 S.W.2d at 800, we find that
the instant case is factually distinguishable from the circumstances in Kroger. In Kroger, the plaintiff was an
eighteen-year-old woman with a tenth-grade education and a two-year-old daughter. See Kroger, 527 S.W.2d at 796. She
had very little business experience, having worked as a clerk at Kroger since she was sixteen. See id. The plaintiff in
Kroger testified that the security investigators accusing her of theft spoke to her in a loud voice and threatened her that if
she did not confess, she would go to jail and not see her daughter for a long time. See id. at 800-01. After the plaintiff
confessed, the Kroger investigators accompanied her to the bank, where they forced her to withdraw money from her
checking account to pay for the allegedly stolen merchandise. See id. at 798. They also told the plaintiff's sister that if she
did not bring additional money in cash within thirty minutes, they would take the plaintiff to jail. See id. 

The facts in Skillern are similarly distinguishable. In Skillern, the plaintiff, who was accused of theft, was taken by the arm
and led to a room for questioning. See Skillern,379 S.W.2d at 689. At one point, she left the room to call her son, but was
physically escorted back to the room. See id. She denied the accusations and asked to see a lawyer, but was not allowed to
do so. See id. When she tried to get up, one of the men put his hands on her shoulders and prevented her from leaving. 
See id. at 689-90. 

We have reviewed Cuellar's deposition testimony in its entirety and conclude she has failed to raise a fact issue regarding
whether she was willfully detained without her consent. According to Cuellar, when Robert Pena, the assistant store
manager, told her Lindsey needed to speak with her, she went into the tape room. She testified Lindsey never physically
touched her, physically threatened her, or restrained her from leaving the room. Cuellar did not ask if she could call her
parents. Although Cuellar described Lindsey's manner as "rude," "abrupt," and "short," he remained "calm," and did not
touch her, yell at her, call her a thief, call her bad names, or curse at her. Although he did not tell her she could leave, he
never told her she could not leave. Lindsey was not in the room when Cuellar wrote her statement confessing to the
"passing" of merchandise and "grazing." 

Cuellar testified she is a journalism major, with two-and-a-half years of college at Del Mar College and Texas A&M
University - Corpus Christi. Prior to her employment at Walgreen's, she worked as a reporter at a television station and at
two newspapers. At the time of her deposition, she was employed as a newspaper reporter. As a journalism major, Cuellar
testified that she enjoys writing and believes she has strong grammar and vocabulary skills. When Lindsey asked her about
"grazing," she asked him to define it. She stated she "asked him to define a lot of things that evening." We conclude that
viewing the evidence in the light most favorable to Cuellar, she has failed to raise a fact issue as to whether she was
unreasonably detained without her consent. We hold the trial court properly granted summary judgment as to Cuellar's
claim of false imprisonment. 

Defamation and Slander

Cuellar contends she was defamed by being accused of a crime. She also contends she will suffer "self-defamation" when
she will be forced to reveal to future employers that she was fired because of allegations of theft. Appellees contend
Cuellar's claim for defamation fails as a matter of law because: (1) she has failed to identify a defamatory statement; (2)
there was no publication; and (3) any statements made by Lindsey or Pena regarding the investigation were qualifiedly
privileged as a matter of law. Cuellar argues that appellees' failure to conduct an adequate investigation constitutes actual
malice, which defeats any qualified privilege which otherwise would attach to communications made in the course of the
investigation. 

Slander is a defamatory statement that is orally communicated or published to a third person without legal excuse. 
Randall's, 891 S.W.2d at 646; Wal-Mart Stores, Inc. v. Lane, 31 S.W.3d 282, 288 (Tex. App.-Corpus Christi 2001, pet.
denied). An employer has a conditional or qualified privilege that attaches to communications made in the course of an
investigation following a report of employee wrongdoing. Randall's, 891 S.W.2d at 646. The privilege remains intact as
long as communications pass only to persons having an interest or duty in the matter to which the communications relate. 
Id. Proof that a statement was motivated by actual malice existing at the time of publication defeats the privilege. Id. In
the defamation context, a statement is made with actual malice when the statement is made with knowledge of its falsity or
with reckless disregard as to its truth. Id. To invoke the privilege on summary judgment, an employer must conclusively
establish that the allegedly defamatory statement was made with an absence of malice. Id. A defendant can negate actual
malice by presenting evidence that shows he or she did not publish the alleged defamatory statement with actual knowledge
of any falsity or with reckless disregard for the truth. Casso, 776 S.W.2d at 559.

Cuellar testified as follows:

Q: [by Appellees' counsel] Okay. Can you tell me then, where the slander is in this story?

A: [Cuellar] The slander could be if I went into another job, if I went to Eckerds and I put Walgreens on an application, and
they said, "Yes, we hired her, and we fired her for stealing."

Q: Did that ever happen?

A: No. But it could.

* * * * *

Q: Listen to my question. Do you have any evidence that Walgreens has done anything to prevent you from getting a job
during that six- to eight-week period after your termination?

A: I do not have any evidence.

Q: Okay. Do you have any evidence that Mr. Lindsey or Mr. Pena told any other employee or any other person about your termination?

A: I do not.

Cuellar also argues she has raised a fact issue regarding publication because under the doctrine of "self-publication," in
circumstances where a defamatory statement is likely to be communicated to a third party, publication can occur when the
defamed party tells a third party. We need not address Cuellar's argument, however, because the record shows she did not
publish any defamatory statement about herself to any prospective employer. See Reeves v. Western Co. of N. America, 867
S.W.2d 385, 395 (Tex. App.-San Antonio 1993, writ denied), disapproved of on other grounds, Cain v. Hearst Corp., 878
S.W.2d 577, 584 (Tex. 1994) (speculation about what appellant may reveal to prospective employers and the action taken
by those employers based on the information does not support a claim for defamation). Cuellar testified that after her
termination, she applied for a number of other jobs; none of the applications asked whether she had ever been terminated. 

We conclude that Cuellar's defamation claim fails as a matter of law because: (1) she has not specifically identified any
defamatory statement; (2) statements made by Pena and Lindsey during the course of the investigation were qualifiedly
privileged; and (3) there was no publication. We hold that the trial court did not err in granting summary judgment as to
Cuellar's defamation claim. 

Negligence

Cuellar's negligence claim is based on the contention that appellees were negligent in the way they handled the
investigation of the allegations against her. In support of her argument, Cuellar cites Texas Farm Bureau Ins. Companies v.
James Sears, et ex., 54 S.W.3d 361, 368 (Tex. App.-Waco 2001, no pet. ). In Sears, the plaintiff, an insurance agent,
claimed he was fired because the insurance company conducted a "negligent investigation" of allegations of wrongdoing
against him. Sears, 54 S.W.3d at 367. Cuellar argues that the tort of "negligent undertaking" is applicable to the facts in
the present case. The Sears court, however, rejected the argument that "negligent undertaking" is applicable in
circumstances where, as here, a company, for its own benefit, conducts an investigation into alleged wrongdoing by an
employee. Id. at 368. Thus, we find that Cuellar's reliance on Sears is misplaced. 

In Lane, 31 S.W.3d at 294, this Court rejected a claim for "negligent investigation" and "refuse[d] to create a new common
law duty which would abrogate the traditional at-will employment contract." Id. We explained:

Under the traditional at-will employment agreement, Wal-Mart had the absolute right to fire Lane for any reason or for no
reason at all. Wal-Mart had no duty to perform any investigation before discharging Lane. Cf. Rios v. Texas Commerce
Bancshares, Inc., 930 S.W.2d 809, 816 (Tex. App.-Corpus Christi 1996, writ denied) (finding that employment at-will
contract cannot support a negligent investigation cause of action because employer has no duty to reasonably investigate
allegations against an employee). Thus, Wal-Mart owed no duty to Lane while performing the investigation. 

Id. We hold the trial court did not err in granting summary judgment on Cuellar's negligence claim. 

Intentional Infliction of Emotional Distress

To recover for intentional infliction of emotional distress, a plaintiff must prove that: 1) the defendant acted intentionally or
recklessly; 2) the conduct was "extreme and outrageous;" 3) the actions of the defendant caused the plaintiff emotional
distress; and 4) the resulting emotional distress was severe. Morgan v. Anthony, 27 S.W.3d 928, 929 (Tex. 2000);
Randall's, 891 S.W.2d at 644; Gorges Foodservice, Inc. v. Huerta, 964 S.W.2d 656, 668 (Tex. App.-Corpus Christi 1997,
no writ).

Cuellar testified that during the investigation, Lindsey was calm and did not yell or curse at her. She testified that she was
not escorted out of the store, but was allowed to walk out by herself. We hold that on these facts, the trial court did not err
in granting summary judgment on Cuellar's claim for intentional infliction of emotional distress. 

We AFFIRM the trial court's judgment. 
 


LINDA REYNA YAÑEZ

Justice



Do not publish. Tex. R. App. P. 47.3.



Opinion delivered and filed this the

28th day of March, 2002.

1. The record before us reflects that Cuellar's Second Amended Petition, filed on May 16, 2000, added a cause of action for
false imprisonment. On May 5, 2000, appellees filed a Supplemental Motion for Summary Judgment, in which they
responded to Cuellar's false imprisonment claim. Appellees note in their Supplemental Motion that Cuellar added the false
imprisonment claim in an amended petition filed on May 3, 2000, but the May 3, 2000 petition is not included in the record
before us. Summary judgment was granted on July 11, 2000. Because appellees recognized that appellant raised the false
imprisonment claim prior to the granting of the summary judgment, we will consider the summary judgment as having
disposed of the false imprisonment claim.